## HUCKABEE, Adm'r. *vs.* SWOOPE.

1. A legatee may come into a court of equity to enforce payment of his legacy from a refractory executor.

2. When the enjoyment of a legacy is made to depend upon a condition subsequent, and the performance of that condition depends alone upon the legatee, who has the power to do what is required, and he fails to perform it, such failure will work a forfeiture of the legacy.

3. But where, upon the marriage of the testator's widow, her husband takes control of the family, locks the house against his wife's sister, and refuses her admission, she cannot be held to have *voluntarily abandoned* the testator's family, or to have forfeited a legacy, which was made to depend upon her remaining single, and living in the testator's family.

4. A will contained these clauses: " I also wish that my sister-in-law, S., be considered as one of my heirs, so far as a support, but not as a legal heir to a part of my estate ; provided she lives single, and in my family. It is also my wish that my executor shall collect all moneys due me, by note or account,

and apply said moneys to the purchase of negroes or stock, for the benefit of my plantation and family. It is also my wish that my family be well supported, in health and sickness, out the proceeds of my plantation and other effects." The testator further directed, that his plantation should be kept up, at the discretion of his executor; that his estate should not be divided, until his oldest child arrived at the age of twenty-one, or married; and that, if his widow married, her legal share of the estate should be set apart and allotted to her. The widow having married again, her share of the estate was allotted to her, and S. afterwards filed a bill against the administrator to enforce the payment of her legacy. *It was held,*

1. That the testator's "family" was not dissolved by the marriage of his widow, but continued to exist *until the time appointed for a final division of the estate* ; and that the complainant was entitled to a support out of the estate until that time, unless she forfeited it by her voluntary abandonment of the family, or marriage.

   (CHILTON, J., *dissenting,* held, That she was entitled to a support *for life,* unless forfeited by her voluntary act.)

2. That neither the widow and her husband, nor the children were necessary parties to the bill.

ERROR to the Chancery Court of Greene.

Tried before the Hon. W. W. Mason.

Sarah A. Swoope filed her bill, against the plaintiff in error as administrator with the will annexed of Henry S. Mason, deceased, setting forth that said Mason died in September, 1843, leaving a large estate both real and personal, which he disposed of by his will, which was duly made and recorded; that among other bequests, it contained the following: "I also wish that my sister-in-law, Sarah A. Swoope, be considered as one of my heirs so far as a support, but not as a legal heir, to a part of my estate, provided she lives single and in my family;" that in said will, James Dorrah was named as executor, who, shortly after the death of testator, proved the same as to the personal estate, and had it admitted to record in the Orphans' Court of Greene county, and took on himself the burden of its execution; that said personal estate amounted in value to about the sum of thirty thousand dollars.

That at the death of the testator his family consisted of his widow and three infant children, and complainant, who had resided with them for several years before that event. That the eldest child died, soon after the testator, and, with that exception, the family continued the same until February,

1846, when the widow married Bushrod W. Bell, who took took the charge and management of the family, living at the former homestead of said Henry S. Mason, deceased.

That shortly after the marriage of the widow, the executor resigned his trust, and the defendant Huckabee became the administrator with the will annexed, and took charge of the estate, amounting to about twenty-eight thousand dollars in value.

That complainant continued to live in the family as constituted, after the marriage of the widow, until the month of September, 1846, when, on returning from a temporary visit to a friend, she found the house locked, her room entirely disfurnished, and her furniture thrown into the yard, and she was informed and believed, that it was the result of orders given by Bushrod W. Bell, who, by his marriage, had become master, or head of the family.

In consequence of this, and other acts of unkindness on the part of said Bell, she was compelled to leave the society of her sister and her children, and seek an asylum elsewhere.

That she was, and is still single; that she is destitute, and has applied to the defendant to allow her a support out of the estate of said Mason, as directed by his will, but that he refuses to do so.

The bill prays that a sufficient sum for her support and maintenance be decreed out of the profits of the estate, on final hearing, and also for an order setting apart a sum for support *pendente lite*, as well as for general relief.

The answer admits every material allegation in the bill, but insists, that on the marriage of the widow with Dr. Bell, the family of Henry S. Mason ceased to exist, and that he did not feel authorized, after that event, to make any appropriation out of the estate for support of complainant.

The answer contained a demurrer, in which two grounds are set out: 1. The want of proper parties defendants. 2. Want of equity.

The proof sustains the allegations of the bill, in every material part, and on the points really at issue, there is no conflict of evidence.

E. W. Peck, for plaintiff in error:

1. The bill is wanting in equity, and should have been dismissed. The clause of the will under which the complainant claims, shows very clearly, that the testator did not intend that any *fixed sum* should be raised out of his estate and paid to her. He wished her *to be supported*, only, and that on two conditions, viz: while she remained unmarried, and a member of his "family." The word "family" is of very indefinite meaning; sometimes meaning "heirs;" sometimes, "children;" and sometimes, "widow and children." 2 Jarm. on Wills, 25; 2 Story's Equity, § 1065. When employed in a will, the true meaning must be ascertained by considering the circumstances in which the testator was placed, the objects which he had in view, and the context of the will. Blackwell v. Bull, 1 Keen, 176, (15 En. Ch. R. 177.)

In this case, the word certainly means the testator's wife and children, and the complainant, so long as she continued to live single and with them. It must be recollected that the testator was under no obligation to provide even a support for complainant. If he had intended that she should be entitled to a support during her life, upon the single condition that she remained unmarried, whether she lived in his family or not, he could have said so, and made provision accordingly. He looked forward to a time when his family should cease to exist, viz: on the marriage of his widow, when her share of the estate was to be allotted to her. Until that time arrived, the "family" was to be supported out of the proceeds "of the plantation and other effects," and this support was to be furnished by the executor. But the marriage of the widow caused a division of the estate, and dissolved the family.

Again; conceding that complainant's right to a support out of the estate was not determined by the marriage of the widow, and that she quit the family because she was driven from it by the ill-treatment of Mr. Bell, still this does not entitle her to have a fixed sum set apart for her support. If the ill-treatment of the husband has deprived her of a support, it is a wrong for which he is personally responsible. Her redress is against him for the injury, and not against the estate, or rather the widow and children.

2. The husband of the widow was an indispensable party to the bill, which seeks redress against an injury which he

caused. No proceeding can be maintained to redress an injury, without making the guilty person a party.

3. The widow and children were necessary parties; for they, and not the administrator, would be injured by a decree in favor of complainant. Story's Eq. Pl. 186, § 205.

·J. R. CLARK, for defendant in error.

1. The complainant was entitled, under the will of the testator, to a vested pecuniary legacy on condition subsequent. 2 Wms. on Exors. 904; 2 Lomax on Exors. 76; 3 Peters U. S: 374; 2 Ed. Ch. R. 78; 6 Bac. Ab. 271.

2. Has she done any act to deprive her of it? It is a maxim "that the act of God shall injure no one," and why? Because no one can control it; and for precisely the same reason the act of a third person, beyond the control of another, shall not injure that other. If the condition was one that it was impossible to perform, then the complainant would be entitled to the legacy without performance. 2 Wms. on Exors. 907; 2 Lomax on Exors. 76; Clarke v. Parker, 19 Vesey 16.

3. And this on the ground that the legatee was not in fault, as was the case of Blackburn v. Edgely, 1 Peere Wms. 604.

4. The family, of which the complainant was a member, was destroyed by the testator's widow uniting in forming a new family, of which the complainant could not be a member under the will of the testator. 6 Bac. Ab. 272.

5. There are no words in the will to show that the testator designed that the complainant should forfeit her legacy in the event that the widow married, and we have no right to imply that such was his intention.

6. Here it is contended that the widow, by marrying, and that without the consent of the complainant, could not only deprive her of her legacy, but add to her pecuniary means by divesting the legacy entirely. This is not to be tolerated in equity. "Equity will not allow any one to take advantage of the bequest over, who has himself been instrumental in causing a breach of the condition." See Lord Strange v. Smith, Ambler, 263; and asserted by counsel *arguendo*, and not denied in D'Aquilar v. Drinkwater, 2 Vesey. & B. 230; 2 Black. Com. 124, note, (ed. 1843.)

7. Conditions subsequent are always construed with great strictness as they divest estates already vested. 2 Wms. on Exors. 913, marg.; 2 Lomax on Exors. 78.

8. ·Burchett v. Woolward, 1 Turner & Russell 441, 11 Eng. Ch. Rep. (Con.) 241, is a case almost identical with this, and there the Master of the Rolls decided that the annuity was not forfeited.

9. The administrator was the only necessary party defendant. Cherry et al. v. Belcher, 5 Stew. & P. 133; 1 Dan. Ch. Pr. 302; Mitf. Eq. Pl. 171; Story's Eq. Pl. § 140; 26 Peters 370.

LIGON, J.—The first question presented for our consideration arises on the demurrer to the bill for want of equity; should this be sustained, the case is at an end.

The bill is filed by the complainant below, as one of the legatees under the will of Henry S. Mason, deceased, to enforce the payment of a legacy. The clause of the will under which she claims is in these words: "I also wish that my sister-in-law, Sarah A. Swoope, be considered as one of my heirs so far (as) a support, but not as a legal heir to a part of my estate: *Provided*, she lives single and in my family." The complainant charges in her bill that she is still single, but has been forced by unkindness to leave the mansion house and children of testator; that his widow has married one Bushrod W. Bell, who has taken possession of the homestead and control of testator's children, and by his unkindness she has been unwillingly compelled to abandon both.

That a legatee has a right to come into a court of equity to compel payment of his legacy from a refractory executor, is a proposition which we do not understand to be denied on the part of the plaintiff in error. But it is contended, that the complainant, by leaving the family of the testator under the circumstances named in the bill, violated one of the conditions upon which she was to continue in the enjoyment of the bequest in her favor, and forfeited her legacy.

The rule is, that if the enjoyment of a legacy is made to depend upon a condition subsequent, and the performance of that condition depends alone upon the legatee, who has the power to do what is required to be done, but fails to do it,

such failure will work a forfeiture of the legacy.   But is this
the case here? By the allegations of the bill, to which alone
we can look under the demurrer for want of equity, the very
reverse of this state of case is presented.   For three years the
complainant faithfully performed the conditions imposed, and
enjoyed the bequest in her favor.   At the end of that time
a new head is placed over the family of the testator, and this,
too, without either her agency or consent.   He takes control,
and in the exercise of his power as master of his family, he
casts her furniture out the house in her absence from home,
locks the door against her, and orders that, on her return,
she is not to be admitted.   We can see no analogy, whatever,
between the facts of this case and those of any case in which
the failure to perform a condition subsequent has been held to
operate the forfeiture of a legacy.

It is also contended, that by the marriage of the widow
with Bell, the "family" of the testator was extinguished, and
thus the condition becoming impossible, the legacy to the
complainant fails, or is void.   It is needless, at this point of
the case, to examine to what extent, if any, the legacy of the
complainant would be affected by the fact, that one of the
conditions upon which she was to continue in its enjoyment
had become impossible, after her right to it had vested, and
she had enjoyed it; since, according to our view of the mean-
ing of the word "family," as used by the testator, it still ex-
ists, and will continue to exist until the time appointed by
him for its dissolution.   To limit its signification to the testa-
tor's wife and children, would do violence alike to his inten-
tion and to the etymology of the word.   It has no fixed, tech-
nical, legal sense.  When employed in a will, the English Court
have sometimes held it to mean "heir," at others "chil-
dren," and in others "widow and children."   2 Jar. on Wills
25; Story's Eq. §1065-6.   In every case, however, those
courts have defined it in that manner, which, in their opinion,
best comported with the intention of the testator.   We will
adopt the same rule in this case, believing it to be the only
safe and proper one.

The word occurs in three several clauses in the will before
us: First, in that containing the bequest to the complainant;
second, in the clause which immediately succeeds it, and in

which he directs his executor to collect the debts due him, "and to apply said moneys to the purchase of negroes or stock for the benefit of my plantation and family;" third, in the last clause, which is in these words, "It is also my wish that my family be well supported, in health and sickness, out of the proceeds of my plantation and other effects."

In all these instances, we apprehend the testator intended to include the white, as well as the slave members of his household. The will is written very inartificially, and doubtless the testator intended to employ the words used in their ordinary sense; and in this State the term family, in common parlance, comprehends not only the wife and children of the master, but his slaves also. To include the latter, not only does no violence to the etymology of the term, but is in strict conformity to it. Over this family, and in its management, the executor is substituted for the master, and while his power to keep it together, and employ its operatives for the common benefit, continues, it exists in legal contemplation, as well as in fact. By the terms of this will, the executor is required thus to control it, until the oldest child becomes of age or marries. Then, and not until then, did the testator intend that his family should be dissolved, and we are inclined to think, that at that period also, he intended that the provision made for the defendant in error should cease.

The bill does not show that this event has happened, by which the right of complainant to a support would be at an end, and therefore there is no hindrance to the complainant in coming into a court of chancery to assert her rights.

Our conclusion is, that the demurrer for want of equity is not well founded.

The demurrer for want of proper parties defendant, cannot be sustained. Bell and wife should not have been joined with the administrator with the will annexed, since they have no interest in the fund sought to be charged with the payment of the legacy of complainant; for it appears that the portion of the testator's estate to which Mrs. Bell was entitled, had been allotted to her before the bill was filed, and separated from the bulk of it in the hands of the plaintiff in error. Neither do we regard the infant children of the testator as necessary parties, as the administrator with the will annexed

was in charge, under the will, of the estate sought to be subjected, and had full power, as trustee, to protect their interest. 1 Dan. Chy. Prac. 302 ; Story's Eq. Pl. § 140.

The Chancellor, therefore, did not err in overruling the demurrer.

In discussing the questions arising on the demurrer, we have been compelled, in a great measure, to examine the whole merits of the case, for neither the answer nor proof puts any new phase upon the point really at issue. The testimony, however, shows that the complainant was a single lady, the sister of the testator's wife, for several years an acceptable and valued member of his family, with no protector except himself, and no means of support but such as she derived from his bounty. She is known, also, to have been kind and attentive to his children, especially to one of them who was lame, decrepit and diseased. Under these circumstances, though no legal obligation rested upon him to do so, yet it is by no means extraordinary, that the testator should, out of his ample means, provide for her a support, at least so long as his children were minors, and leave her afterwards to the kindness and protection of those whose infancy she had watched over and nursed, whose affections she had won, and whose gratitude, in mature years, would extend to her in age the support she might need and the protection she might require.

We think a fair construction and interpretation of the will shows, that this was what the testator intended to do. He wishes his executor to keep up his plantation, but leaves this to his discretion. He then provides for the education of his children at the best schools, and devotes the proceeds of his plantation for that purpose ; " and that there shall be no division of my property until my oldest child shall become of age or marry ; and in the event of my wife's marriage after my death, it is my wish that my property shall be divided according to law, and she to receive her lawful right of all my effects, and the balance to remain in the hands of my executor until my oldest ——— becomes of age or marries, at which time I wish my property equally divided between my children then living." The next clause contains the provision in favor of the defendant in error, which has already been quo-

ted, and need not be here repeated. The next directs his executor to collect the debts due him, and purchase negroes and stock for the plantation and family; then follows the last, which has been once copied in this opinion, and directs the executor to support his family well out of the proceeds of his "plantation and other effects."

To say that he intended the provision made for the support of his family to cease on the marriage of his widow, is wholly unauthorized. He devotes a fund to this purpose, the proceeds of plantation and other effects, and in other parts of the will, he desires that his property should be kept together until his oldest child becomes of age or marries, thus fixing, beyond a well-founded doubt, the period at which this provision should cease. At this period he directs that his property shall pass absolutely to his children, to be held by them in their own right; and at this period, too, both his estate and his family, in the sense of the will, are, by his appointment and direction, dissolved forever.

He wishes the defendant in error to be considered as one of his "heirs so far as a support, but not as a legal heir to a part of his estate." Evidently intending to use the term "heir," where it first occurs, in the sense of "child." The provision, then, for her support, is just such as he made for his children, and no more. The latter, at a particular period, (when the oldest child becomes of age or marries,) are to receive and enjoy the body of his estate, in his language, "as legal heirs;" but the former is forbidden to take any portion of his estate in such right.

These views sufficiently define the rights of the defendant in error, under the will of the testator, and as the result arrived at by us renders it necessary that the case should go to the Master in the court below, and as the reference to that officer was the only decretal order made by the Chancellor, it only remains to be said, that the decree of the Chancellor is affirmed, and the cause remanded, to be proceeded on in the court below, according to the view expressed in this opinion.

Let the decree be affirmed, at the costs of the plaintiff in error.

CHILTON, J.—I concur with my brethren, in the opinion

that the defendant in error is entitled to a support out of the estate of the testator, but dissent from that portion of the opinion which holds that her right is to terminate when the oldest child marries or arrives at the age of twenty-one. The will gives her a present right to a support upon the death of the testator, and this right is dependent for its continuance upon two conditions subsequent. One is, that she remains in the testator's family, the other, that she remains single.

The obvious meaning of the testator was, that if Miss Swoope *voluntarily* abandoned his family, or married, the provision for her support should cease. It clearly was not in his contemplation that a change in the condition of his family, whether wrought by the marriage of the widow, or the death of the children, or sale or division of the slaves, or from any other cause over which Miss Swoope had no control, should defeat the provision for her support. Had he intended the provision to cease upon the majority or marriage of his oldest child, I presume he would have so stated it in the will. But he has not done so, and as his declared intention, being legal, must be the law for the government of the court, when called on to execute the will, I cannot fix a period for the termination of the "support" which the testator has not prescribed. The division of the estate upon the majority of the oldest child, or his marriage, is not at all inconsistent with the bequest to Miss Swoope.

The established rule, in regard to the construction of conditions subsequent, requires that the court should construe them strictly, and if their performance becomes impossible, the legacy is not divested by the failure to perform; see 2 Lomax on Ex'rs. 78; 2 Wms. on Ex'rs. 913; 11 Cond. Eng. Ch. Rep. 241; and cases collected in 2 Bridgman's Digest, 170, 178. In my opinion, the clear intent of the testator was, to give this lady a support for life, unless, by her *voluntary* act of leaving his family or marrying, she should forfeit it; and to hold that he designed to deprive her of a support at the time when she would be most likely to need it, and this without any fault of hers, would seem to be repugnant to the motive which prompted him to give her anything by way of support.