## MARY R. YORK *v.* MARYLAND TRUST COMPANY.

*Testamentary Trustee — Change of Investments — Conflicting
Interests of Cestuis—Discretion of Trustee.*

While courts of equity have exclusive jurisdiction of express
trusts created by will, they will not assume that jurisdiction
where the trust is discretionary, unless there be some evidence of
bad faith or a want of reasonable skill and judgment in its
management by the trustee, or unless they are requested to do
so by the trustee or the *cestui que trust* with his consent.   p. 617

Where a testamentary trustee is expressly authorized to in-
vest the trust fund in designated securities, or to keep the fund
invested therein, he may exercise that authority without inter-
ference from the courts, unless such a course would amount
to bad faith, or a want of ordinary skill and judgment, or
misconduct.      p. 617

The will expressing testator's wish that the trustee there-
under should retain, so far as might be reasonably proper, cer-
tain stocks, constituting the bulk of the trust fund, which had

been long in his family, *held* that the trustee did not abuse his discretion in refusing, at the request of the life tenant, and over the objections of the remaindermen, to sell those stocks, so as to secure a larger annual return, the stocks being regarded as sound, with a probability that stock dividends thereon would be declared, by which the value of the corpus of the fund would be increased.                    pp. 618-620

*Decided January 14th, 1926.*

Appeal from the Circuit Court No. 2 of Baltimore City (STEIN, J.).

Petition by Mary R. York against the Maryland Trust Company, trustee under the will of Roy F. York, deceased, and others. From an order overruling a demurrer to the answers of defendants, plaintiff appeals. Affirmed.

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*Leigh Bonsal,* with whom were *Bonsal & Lee* on the brief, for the appellant.

*Joseph C. France* and *Carlyle Barton,* with whom were *Frederick J. Singley* and *Niles, Wolff, Barton & Morrow* on the brief, for the appellees.

OFFUTT, J., delivered the opinion of the Court.

Roy F. York died October 27th, 1923, in the City of Baltimore, possessed of personal property appraised at $1,804,825.16, which he disposed of by a last will and a codicil thereto, which were admitted to probate by the Orphans' Court of Baltimore City on October 30th, 1923.

In that will, after leaving $5000 to the Rainbow Hospital for Crippled and Convalescent Children of Cuyalwga County, Ohio, and $100,000 to his wife, Mary Read York, who survived him, he disposed of the residue in the following manner:

"All the rest, residue and remainder of my estate
* * * I give, devise and bequeath to the Maryland
Trust Company (of Baltimore, Maryland), in trust
nevertheless for the uses and purposes hereinafter
mentioned.  Said Trustee shall have absolute control
of said trust estate and shall handle, manage, control,
lease, bargain, sell, transfer, convey, mortgage, encum-
ber, allot, invest and reinvest the same, or any part
thereof, upon such terms, under such conditions and
in such securities as it in its discretion shall deem
best; but it is my wish that my stock in the following
companies shall be retained by my trustees so far as it
is reasonably proper so to do, namely: Standard Oil
Company of New Jersey; Standard Oil Company of
New York; Standard Oil Company of Indiana; Stand-
ard Oil Company of California; Atlantic Refining
Company (common stock); Prairie Oil and Gas Com-
pany, and Anglo-American Oil Company.  All statu-
tory limitations and restrictions as to the investment
of trust funds now in force and that may hereafter be
enacted, are hereby expressly waived by me, and in
the execution of said trust, said trustee is authorized
and empowered to comply with all legal requirements
as to the execution of all writings, deeds, mortgages,
leases, or other documents or formalities, without the
order of any court; and furthermore, no purchaser
from any trustee shall be required to see to the appli-
cation of any money paid to it.  The said trustee shall
not be liable for any losses resulting from any invest-
ment or from its management unless the same shall
have been occasioned by or result from its wilful or
fraudulent misconduct."

And in connection with that provision should be read the
codicil which provides:

"It is my will and desire, and I do declare, that if
during the existence of any life estate any of the cor-
porations whose securities are held by my trustee shall
declare stock dividends, the same shall be considered
and treated as part of the corpus of the trust estate

and not as income. It is further my will, and I so declare, that in case of securities taken or purchased for the trust fund at a premium, the trustee shall not be required to set aside any part of the income thereof as a sinking fund to retire or absorb such premium; and the trustee shall further treat as a part of the principal of the trust estate any increase that may be derived from the sale of securities over the purchase price, and also any increase that may be derived from the subsequent redemption or payment at maturity of securities taken or purchased at less than the redemption price or at less than par."

After fixing the powers of the trustee, the will further provides that the trustee shall pay from the net income collected by it $260 a month to Mrs. Virginia G. Read during her life, and the balance including, after her death, the amount payable to Mrs. Read, to the testator's wife, Mary Read York, during her life, and then to his surviving children or their issue until they should respectively attain the age of twenty-five years, and when and as each child attained said age to distribute to it its share of the corpus, and if he left no surviving children or descendants, then it directs the trustee to

"divide the trust estate into three equal parts: I give, devise and bequeath one of said three equal parts of the residue of my said property to my sister, Georgia Y. Maclennan, her heirs, executors and assigns, forever; I give, devise and bequeath one of said three equal parts to my brother, Robert H. York, his heirs, executors and assigns, forever; I give, devise and bequeath one of said three equal parts to the Maryland Trust Company (Baltimore, Maryland) and its successors, as Trustee, for the uses and purposes, and under the conditions and provisions hereinafter set forth; The net income derived from the one-third part so held in trust shall be disbursed and distributed by said trustee to the children of my brother Robert H. York, share and share alike, as follows: To my niece Kathleen White, one-

third of said net income; to my nephew Barney H.
York, one third of said net income."

It further provides that the income from the share be-
queathed to the children of Robert H. York shall be paid
to them until Gordon F. York reaches the age of twenty-five
years, and in the event of his death before that time, to the
two survivers until the youngest reaches that age, when the
trust is to determine and the fund be distributed to the three
persons named, the issue of any one of them dying prior to
the final distribution to take the share which the person so
dying would have taken if living, and in the event of the
death of any one of the children of Robert H. York before
final distribution without issue his or her share to go to the
survivor or survivors of them then living, and in the event
of the death of all of them without issue, then to the right
heirs of the testator.

The greater part of the estate which the testator possessed
at the time of his death was invested in the stock of various
oil companies, and a part of his fortune appears to have
been ultimately derived from his grandfather, Lamon Hark-
ness, "one of the original so-called Standard Oil men," and
he himself appears to have dealt largely in the stock and
securities of the Standard Oil Company and its subsidiaries.
At the time of his death he owed various banks and bankers
and others over one million dollars, and the executor, which
was also the Maryland Trust Company, in order to liquidate
that indebtedness, found it necessary to sell the greater part
of the oil stock owned by the testator, but after doing that,
and after paying the expenses of administration and the state
and federal inheritance taxes and the specific legacies, there
was distributed to the trustee, subject to the trusts stated
above, $616,509, nearly all of which was invested in the fol-
lowing oil stocks: "330 shares of Atlantic Refining Company,
valued at $37,950; 1,100 shares of Anglo-American Oil Com-
pany, valued at $17,600; 250 shares of the Prairie Oil and
Gas Company (old stock), valued at $58,750; 5,000 shares
Standard Oil Company of New Jersey, valued at $180,000;

722 shares Standard Oil Company of New York, valued at $25,992; 2,025 shares Standard Oil Company of California, valued at $123,525, and 2,620 shares of Standard Oil Company of Indiana, valued at $157,200; that the said enumerated seven stocks, known as Standard Oil stocks, aggregate in value $600,817," and yielded an annual income of about $19,000, or about $3\frac{1}{2}\%$ on the investment.

On April 17th, 1925, Mary R. York, the widow of the testator, filed in Circuit Court No. 2 of Baltimore City a petition against the remaindermen named in the will, in which that court was asked to "take jurisdiction in the premises, and advise and direct the trustee as to the proper and safe investment of the trust estate in order that your oratrix's interest as life tenant may be fully protected, and that her income from the trust estate may be increased." The ground for the relief sought, as alleged in the petition, was that $97\frac{1}{2}$ per cent. of the whole estate was invested in Standard Oil stocks, which only yielded a current return of about $3\frac{1}{2}$ per cent., and that objection is thus stated in appellant's petition:

"That since the death of the testator on October 27th, 1923, the Atlantic Refining Company has stopped paying dividends, and that therefore your oratrix is receiving no income whatever from this stock, which, if sold at present price, would produce about $40,000, and which could now be sold for more than the value at which it was distributed to the trustee in the administration account.

"Your oratrix therefore asserts that it is the duty of the trustee to sell this stock and invest the same in safe interest-bearing securities, which should produce for the benefit of your oratrix two thousand dollars ($2,000) per year or more. * * *

"Your oratrix further shows that it is the settled policy of the Standard Oil Company of New Jersey, the Standard Oil Company of New York, the Standard Oil Company of Indiana, and the Standard Oil Company of California to pay a low rate of interest in dividends, but from time to time to declare stock dividends, which stock dividends your oratrix shows, under

the codicil of the will of the testator, would inure chiefly to the benefit of the remaindermen.

"Your oratrix therefore believes and charges that it is an unwise and improper thing for a trustee to hold the whole of a trust estate invested in stocks of this character, and that such a method of investment is contrary to the practice of equity courts.

"Your oratrix further charges that the seven items of stocks, known as Standard Oil stocks, aggregating in value $600,817, are all stocks of private corporations, and being engaged in the production and refining of oil, are necessarily in competition with a large number of other private corporations and subject to the changes in trade conditions which occur in all business enterprises. * * *

"Your oratrix further shows that the expression of the wish by the testator is in no way mandatory, and that said trustee under the very broad powers given it has ample and undoubted power to sell said stocks or a portion of them, and that the wishes of the remaindermen, while they are to be considered, should **not** conclusively control said trustee, and that said trustee should also consider carefully the wishes and rights of your oratrix, the life tenant.

"And your oratrix further shows and believes that while the powers given to the trustee are very large, that this discretion of the trustee is one that should not be exercised in an arbitrary manner, but should at all times be exercised under the review and control of a court of equity."

The remaindermen, the appellees here, and the trustee, answered that petition. The trustee in its answer in substance alleged that the stock investments were sound, that they were made in accordance with the express wish of the testator who was "fully conversant with the affairs of the Standard Oil Company and of the subsidiary companies thereof in which his estate was so largely invested; that he had confidence in said companies and in their efficient management; that investments in the said companies had been the founda-

tion of the fortune of his grandfather, Lamon Harkness, and
that both the testator and his father had continued to hold
or to invest in the stocks of the said companies which had
been considered by the family as being sound investments
for three generations; that while the current dividends were
not large it was the policy of the several companies to declare
from time to time stock dividends, and that the testator had
that in mind when he created the trust, because he specially
provided that all such dividends should go to the corpus
of the estate, instead of to the income; that while one of
the companies, the Atlantic Refining Company, had not re-
cently paid dividends, it believed the conditions requiring it
to take that action were not permanent and that it would be
unwise to sell the stock at present, and that the record of
the earnings of said companies filed as an exhibit with this
answer, disclose that the business of all of said companies
has been profitable and that notwithstanding the alleged com-
petition, the earnings have been sufficiently substantial to
warrant payment of a gratifying return on the investment;
that the securities held by it, it is reliably informed, are im-
proving in market and intrinsic value, and that it should
not dispose of them without the consent of the remaindermen,
and that

> "Finally: This respondent submits that (1) the
> testator's expressed wishes as to the retention of his
> holdings in the named companies, and (2) the confi-
> dence and discretion, as to the sale thereof, reposed in
> and conferred upon the trustees should not (for any-
> thing in the bill alleged) be disregarded or controlled
> by this court particularly in view of the testator's dec-
> laration, namely: that the trust was not to be admin-
> istered under court direction."

To the same effect was the answer of the remaindermen,
wherein their attitude towards any change in the investment
was thus stated:

> "They admit that they are very decidedly opposed
> to any shifting of the present investments of the trust

estate in the hands of the trustee, and that they will
not consent thereto; further answering said fourth
paragraph, these respondents allege that it was the
expressed wish of the testator, Roy F. York, that his
stock in the following companies should be retained
by said trustee, in so far as it is reasonable and proper
so to do : Standard Oil Company of New Jersey, Stand-
ard Oil Company of New York, Standard Oil Com-
pany of Indiana, Standard Oil Company of Califor-
nia, Atlantic Refining Company (Common Stock),
Prairie Oil and Gas Company, Anglo-American Oil
Company.

"These respondents allege that in expressing said
wish, the late Roy F. York observed a family tradi-
tion; that he was the grandson of the late Lamon
Harkness, one of the original so-called Standard Oil
men, who bequeathed many of his so called Standard
Oil securities to his daughter, Julia H. York, the
mother of the late Roy F. York, from whom he in-
herited the larger part of his interest in said oil
companies represented by the securities owned by him
at the time of his death. * * *

"Answering the sixth paragraph of said bill of
complaint, these respondents neither admit nor deny
the allegations contained therein in regard to the
value of the stock in the Atlantic Refining Company,
or the probable result from any reinvestment of the
proceeds of the sale of such stocks, but they emphat-
ically deny that it is the duty of the trustee named
in the will of the late Roy F. York to sell the stocks
and invest the proceeds thereof in other securities
which should produce to the benefit of the complain-
ant two thousand dollars per year or more."

A demurrer to those answers was overruled and from that
order this appeal was taken. And, as appears from what
has been said, the only question which it submits is whether
upon the facts stated a court of equity would be justified in
coercing the discretion vested by the will and codicil in the
trustee, by requiring it to change the present investment of
the trust funds or any part thereof.

The legal principles involved in that question have been so recently stated and so fully discussed in *Baer v. Kahn,* 131 Md. 25, and *Fox v. Harris,* 141 Md. 499, etc., that any further discussion of them at this time seems unnecessary. From an examination of those cases and the authorities cited therein it appears, first, that while courts of equity have exclusive jurisdiction of express trusts created by will, they will not assume that jurisdiction where the trust is discretionary, unless there be some evidence of bad faith or a want of reasonable skill and judgment by the trustee in the management of the trust estate, or unless they are requested to do so by the trustee or by the *cestui que trust* with his consent. *McCoy v. Horwitz,* 62 Md. 188; *Perry on Trusts,* pars. 508-511; *Story, Eq. Jur.,* par. 1424; 26 *R. C. L., "Trusts,"* par. 234. And it is well settled that where a testamentary trustee is expressly authorized to invest the trust fund in designated securities, or if already invested in such funds to keep it invested therein, he may exercise that authority without interference from the courts, unless such a course would amount to bad faith or a want of ordinary skill and judgment, or misconduct, 28 *R. C. L., "Trusts,"* par. 164; *Perry on Trusts,* pars. 248n, 511, 460; *Gilbert v. Kolb,* 85 Md. 627. The nature and the incidents of such a discretion are nowhere more clearly stated than by Judge McSherry, sitting at *nisi prius,* in language which was adopted by this Court in *Gilbert v. Kolb, supra,* where he says: "Generally speaking, where there are no restrictions imposed by the testator, a trustee named by him is vested with a discretion which a conventional trustee does not ordinarily possess, and where a discretion is expressly conferred by will, its exercise in good faith and with proper diligence, though resulting in a pecuniary loss, presents quite a different situation from that which would arise were the loss to follow from an unauthorized act, or from the exercise of an assumed discretion not entrusted to a conventional trustee. And this is so because the power of the one is broader than the power of the other, and the accountability of each is measured by a totally different standard. Loss resulting

from an act of a conventional trustee, though the act were
done in the utmost good faith, if it were not an act permitted
by the instrument creating or defining the trust, or were done
without proper judicial sanction, would fall on the trustee,
who having no discretion at all or a very limited one, is
justly held to a rigid accountability without the slightest
regard to the motives that may have influenced his action,
or the prudence he displayed in performing it. *Zimmerman
v. Fraley,* 70 Md. 561. But where the testator has selected
a particular person as trustee, and has clothed him with a
discretion in regard to making investments, and confided in
this behalf to his judgment and integrity, and such trustee
in good faith, and with diligence, makes an investment of
trust funds, strictly in accordance with the power conferred
upon him, or in any way that a court of equity would have
sanctioned at the time, if advised of the circumstances as the
trustee then knew or honestly believed them to be, will be
exonerated should a loss ensue, though he failed to invoke the
guidance of the court, or to procure its subsequent ratifica-
tion of the step he took." It has been said that the duty of a
trustee in respect to investments is to secure as much income
as possible, and at the same time to invest in securities which
will render loss or shrinkage of the trust fund highly im-
probable. *Pomeroy, Eq. Jr.,* par. 1071.

The effect of the relief sought by the appellant in this case
would be to substitute for the discretion vested in the trustee
by the testator in discharging those exacting and conflicting
duties the judgment of the court. But any such action could
not, upon the authorities cited, be justified, unless it is rea-
sonably clear that the conduct of the trustee in exercising the
discretion thus vested in it is so arbitrary or unreasonable as
to fairly indicate a want of skill, or a want of sound judgment,
or bad faith. As to the safety of the investments little need
be said, first, because the remaindermen, all of whom are
more interested in that incident of the investments than in
the current yield thereof, declare that they are satisfied with
them, and do not want them changed, and, second, because

it appears that the market and intrinsic value thereof is increasing, including the stock of the Atlantic Refining Company, the market value of which is worth more at present than when it was distributed to the trustee, and, third, because there is nothing in the record to 'indicate that the judgment of the trustee that these securities are safe is not sound.

The whole question, therefore, comes to this: Should the court, upon the facts of this case, require the trustee to dispose of securities which are safe, but which yield a low current return, and invest the proceeds in others which will yield a higher current return, but which may not be as safe, or in securities having the same margin of safety, which are likely to yield a higher current income, but a lower ultimate return, when the probability of future stock dividends is considered?

In dealing with that question some weight must be given to the wishes and the intention of the testator, as well as to the conflicting duties owed by the trustee to the life tenant and the remaindermen. In *Vickery v. Evans,* 33 Beav. 382, it was said: "It is also quite clear that the plaintiff (the remainderman) cannot insist that the fund shall be invested at the smallest possible rate of interest, so as to increase the amount ultimately payable to him," nor "can the trustees, by fraud or collusion, so exercise their discretion as unduly to reduce the amount payable to the plaintiff" (the remainderman). *Ibid.* In this case the desire of the remaindermen to retain the investment in its present form, manifestly is induced by the probability that the ultimate value of their respective shares will be increased by the declaration of stock dividends, and they are indifferent to the consideration that that increase be brought by keeping the current dividends below the rate which the earnings of the companies declaring them would justify. On the other hand, the life tenant is interested in securing the largest possible present income from the investments, and is not at all concerned in increasing the ultimate value of the shares which the remaindermen will receive. The testator was of course aware of that conflict in

interest between the several objects of his bounty, as well as of the delicate nature of the discretion necessary to adjust it so as to fairly protect the interests of both the life tenant and the remaindermen, and with that knowledge he committed that discretion to the trustee in this case, and at the same time indicated to it the course he desired it to pursue. It is true that his directions are precatory rather than mandatory in character, but nevertheless they are sufficiently specific to warrant the trustee in taking them as its guide, if it can do so without manifest prejudice to the rights of any of the *cestuis que trust,* and we find it difficult to say that, in following the request of the testator in retaining stock owned by him at his death, that the trustee has abused the discretion reposed in it, upon the facts which we have stated. It is true that that part of the estate which is invested in the Atlantic Refining Company is at present wholly unproductive, since that company paid no dividends in 1925. But since it had regularly paid dividends for the nine preceding years, it cannot be said that because the trustee did not immediately dispose of its stock in that company when it failed to declare a dividend in 1925, that it acted arbitrarily or unwisely, in view of the fact that its present value is said to be greater than when it was distributed, although we do not hold that it would be justified in retaining that investment for an unreasonable period of time if it continues to be unproductive, even though it be likely that it will ultimately declare a stock dividend sufficient to yield a fair average return for the unproductive period.

Giving its legitimate value to the language of the will and the manifest intention of the testator, that the trustee should retain his Standard Oil Company investments as far as possible, for the purpose of increasing the value of the corpus of the estate, we have been unable to discover in this case anything which could justify the conclusion that the trustee has been guilty of bad faith or arbitrary conduct, or has failed to exercise reasonably sound judgment in retaining those investments.

But in saying that we are not to be understood as holding that, but for the language of the will, the trustee would have been justified in retaining at the expense of the life tenant for the benefit of the remaindermen so large a part of the estate in securities yielding so small a current return, for upon that proposition we express no opinion.

From what has been said it follows that the defence set up in the answers filed by the appellees was good, and that the demurrers thereto were properly overruled, and that the order appealed from will be affirmed.

*Order affirmed, with costs.*