S. K. ADAMS, INC., Respondent, *v.* MITSUBISHI SHOJI KAISHA, LTD., Appellant.

Supreme Court, Appellate Term, First Department, June 24, 1942.

*Hunt, Hill & Betts* [*William Logan, Jr.,* of counsel], for the appellant.

*Alex L. Rosen,* for the respondent.

McLAUGHLIN, J. Plaintiff and defendant, on or about May 29, 1941, entered into a contract for the purchase of a shipment of sesame seeds, delivery to be made during May or June, 1941, at the seller's option, from Shanghai. The complaint alleges that the defendant failed to ship or deliver the merchandise, resulting in plaintiff's damage in the sum of $1,499.20. The answer admits an agreement of sale but alleges that the complaint does not set forth all the terms thereof. It alleges that the agreement of May 29, 1941, contained the following clause: " If shipment or delivery hereunder shall be delayed through any act or neglect of the carrier or by any embargo, hostilities, war, civil disturbance, strike, fire, accident, government seizure or requisition, *force majeure* or by reason of any other cause whatsoever, whether domestic or foreign, and also whether direct or indirect, beyond the reasonable control of seller, seller shall not be responsible therefor, and shipment or delivery may be postponed or cancelled by seller at its option, without any liability attaching to seller hereunder by reason of any such delay, postponement and/or cancellation   *   *   *."

The answer also alleges that the shipment was delayed because of government regulations and other factors beyond defendant's control and that as a result the defendant notified the plaintiff of its intention to cancel the contract.

Defendant is a foreign corporation organized under the laws of Japan and licensed to do business in New York. It appears that after the contract was made the defendant arranged for shipment of the seeds through its Shanghai office on the steamship *Nako Maru,* which was scheduled to sail from Shanghai on or about June 24, 1941. The Japanese government subsequently canceled this sailing. It is claimed by the defendant that after plaintiff agreed to extend the time of shipment to July 31, 1941, defendant's Shanghai office attempted to obtain space for shipment of the merchandise on American, English or Japanese vessels, but was unable to do so, and also was unable to obtain the necessary permit from the Japanese government. Cancellation followed on August

1, 1941. The present action was started in September, 1941, and in February, 1942, defendant moved to stay the action until three months after the restoration of peace between the United States and Japan. That motion was denied, and it is from the order thereon that this appeal is taken.

The question to be determined is whether or not the lower court properly exercised its discretion in refusing to stay this action. Defendant claimed that it would be necessary to secure testimony from its Shanghai office in order to prove facts which would excuse the defendant from the performance of its contract under the clause alleged in the answer and quoted above.

It is argued by the plaintiff that defendant has the necessary witnesses and all of the necessary means for establishing its defense right here in the United States. It points out that the principal person employed by the defendant in its New York office is available to testify at the trial in addition to the other employees whose testimony could be obtained even though they are in the custody of the United States at the present time.

In order for the defendant to succeed in this action it will be necessary for it to prove that the shipment of the seeds in question was not delivered because of conditions which were beyond the reasonable control of defendant, thus bringing the situation within the terms of the contract between the parties. It appears that all the arrangements for shipping the merchandise were handled solely by the Shanghai office. Any proof as to what efforts were made by that office in order to obtain shipping space on other vessels after the cancellation of the sailing on the *Nako Maru* would necessarily have to be furnished by the employees of that office. Regardless of what records the defendant may have in its New York office and what information its employees here may have, they would be unable to testify as to what was actually done by the Shanghai office. Under the circumstances it would seem unfair and unjust to compel the defendant to proceed to trial without the opportunity of presenting the testimony of its Shanghai office employees. Such testimony, of course, cannot be obtained by deposition under present conditions and this evidence will not be available until the termination of the war between this country and Japan. I, therefore, think there was improper exercise of the lower court's discretion in denying the motion for a stay.

There is ample precedent in decisions made in actions pending during the last war for the granting of a stay of an action under circumstances similar to those in this case. (*Watts, Watts & Co. v. Unione Austriaca*, 248 U. S. 9; *Murray Oil Products Co., Inc., v. Mitsui & Co., Ltd.*, 178 Misc. 82; affd., 263 App. Div. 979; *The Kaiser Wilhelm II*, 246 Fed. 786; *City Nat. Bank of Selma*

v. *Dresdner Bank of Bremen*, 255 id. 225; *Kintner* v. *Hoch-Frequenz, etc., Drahtlose Telegraphie*, 256 id. 849.) Those cases proceeded upon the doctrine that the courts would protect the rights of any enemy aliens even though the interests of some of our citizens might be prejudiced by holding up a case during the war.

At the present time the international situation makes it impossible for the defendant to obtain essential evidence to prove its defense. We are now in probably the greatest of all wars where the idea of fair play fundamentally in every democracy is at stake. As never before should we so scrupulously give, even to alien enemies, impartial justice. We must be emphatic in seeing that the courts are foremost in guarding the rights of these aliens. To deny the stay here would place this court in the position of not fully protecting the rights of this alien enemy to the same extent as it would those of a citizen.

Respondent's contention that this court may not review the order of the lower court because it involved discretion is without merit. To hold that argument sound would mean that there could never be a review by an appellate court of an exercise of discretionary power. It is also asserted by appellant that the defendant's claim, that one of the reasons for failure to deliver was because of the ruling of the Japanese government against shipments, is not made in good faith but was only brought up as an afterthought. Plaintiff bases its assertion upon the fact that defendant insisted upon making a correction in its examination before trial by adding as an additional ground for failure to deliver the fact that they were prevented from so doing by regulations of the Japanese government. I do not think it can be said that this was a mere afterthought for at that very time the defendant's attorneys had in their possession an affidavit from the Shanghai office in which the imposing of these regulations was specifically alleged.

In its order denying the motion for a stay the court did so without prejudice to a renewal at the time of the trial. The lower court took the position that the trial court would be in a better position to determine whether or not the trial should proceed or whether a stay should be granted. I cannot agree that that is a sound view to take. It is clear that the defendant cannot safely proceed without the necessary evidence from its Shanghai office, which cannot possibly be obtained until after the war is over, and a stay should be granted.

Order of April 14, 1942, reversed, with ten dollars costs and disbursements to abide the event, and motion granted.

Appeal from order of March 12, 1942, dismissed.

MILLER, J., concurs; McCOOK, J., dissents.