21 So.2d 256

#### SANDERSON v. GABRIEL et al.

#### FIRST NAT. BANK OF MONTGOMERY v. SAME.

#### 3 Div. 421.

Supreme Court of Alabama.

Jan. 18, 1945.

Rehearing Denied March 8, 1945.

L. A. Sanderson, of Montgomery, for appellant.

Leo M. Brown, of Mobile, and Thos. B. Hill, Jr., & Wm. Inge Hill, of Montgomery, for appellees Gabriel and Fried.

FOSTER, Justice.

The question in this case relates to the exercise of a power conferred by the will of Selma Kaufman, deceased on the executor and trustee.

Pending the administration of the estate jurisdiction was removed to the circuit court, in equity, on the petition of the executor who is also the trustee. Title 13, section 139, Code. Thereupon the trustee filed this petition in that court praying for a decree:

"1. Ratifying and approving the actions of your petitioner in deciding that the corpus and accumulated income of said trust estate should be distributed to said beneficiaries resident in the United States, to-wit, Alma Gabriel and Carolyn Fried; and

"2. Authorizing and directing your petitioner to make distribution of said trust estate forthwith to the said Alma Gabriel and Carolyn Fried; and

"3. Decreeing that Minna (Speier) Steigerwald, Malwine (Speier) Hartman and Willie Kaufman have no interest in or to any of the bequests, devises or assets under said will.

"4. Further instructing your petition(er) in the proper administration of said estate."

The will is alleged to have been executed March 10, 1941, and testatrix died November 28, 1942, and the will was probated and letters issued June 1, 1943. The situation here is with reference to certain features of paragraph XII, which we quote as follows:

"The trustee shall hold said trust estate in trust for the equal use and benefit of the following persons: Alma Gabriel, now of Mobile, Alabama; Carolyn Fried, now of New York City; Minna (Speier) Steiger-

wald, who now resides in Frankfort-on-Main, Germany; Malwine (Speier) Hartman, who now resides in Frankfort-on-Main, Germany; and Willie Kaufman, who now resides in Frankfort-on-Main, Germany. * * * If at any time during the existence of this trust the country in which any of the beneficiaries are at that time residing should engage in war with the United States, then and in that event the share of such beneficiary shall immediately terminate subject to the conditions hereinbelow set forth, and the proceeds of such beneficiary's share of the trust, both corpus and income, if any, shall after six months be divided equally among the beneficiaries who are within the United States. It is specifically provided, however, that during said six months interval the beneficiary whose trust has been so terminated shall have the right to show that at the time of the termination of the trust said beneficiary was not residing in a country at war with the United States and if such proof is made within said six months period to the satisfaction of the trustee, whose decision shall be final and which decision shall not be questioned in any way by anyone, then and in that event, said trust shall not terminate but shall remain in full force and effect.

"The decision of the trustee with reference to any distributions of principal and income hereunder or as to matters of residence of beneficiaries shall be final and conclusive and shall not be subject to question or review by anyone and the trustee shall not be liable for any distributions made hereunder or any decisions with reference to matters of residence if such distributions or decisions have been made by the trustee in good faith."

Petitioner made the following allegations in paragraphs four and six:

"4. Petitioner further avers that two of said beneficiaries of said trust, to-wit, Alma Gabriel and Carolyn Fried, both reside in the United States, the former being a resident of Mobile, Alabama, and the latter being a resident of New York City; that the other three beneficiaries, to-wit, Minna (Speier) Steigerwald, Malwine (Speier) Hartman and Willie Kaufman, are to the best of petitioner's information and belief residents of Germany, a nation which is at this time and has been since December 8, 1941, engaged in war with the United States; that your petitioner has made diligent and conscientious efforts and inquiry to ascertain if there has been any change in the residence of either of said three beneficiaries who are, according to the recitations contained in said will, residents of Germany at the date of the execution of said will, and so far as your petitioner has been able to ascertain they yet reside in Germany, and your petitioner, therefore, avers and states upon such information and belief that said three named beneficiaries, to-wit: Minna (Speier) Steigerwald, Malwine (Speier) Hartman, and Willie Kaufman are and have been since the date of the execution of said will, and during the time that the state of war has existed between the United States and Germany, residents of Germany and that, therefore, in accordance with the provisions of said will, your petitioner has so concluded and has decided in good faith that the shares of said three beneficiaries, to-wit, Minna (Speier) Steigerwald, Malwine (Speier) Hartman and Willie Kaufman, in said trust, and in the estate of Selma C. Kaufman, deceased, have terminated, respectively, and that the proceeds of their shares, respectively, should be divided equally among the beneficiaries who are within the United States, to-wit: Alma Gabriel and Carolyn Fried."

"6. * * * Petitioner has no actual knowledge as to whether or not Minna (Speier) Steigerwald, Malwine (Speier) Hartman or Willie Kaufman, or either of them, were living at the time of the death of the testator or if all or any of them were living at that time, it has no actual knowledge as to whether any of them has since died. If either of the said named beneficiaries were dead at the time of the death of Mrs. Kaufman or has since died, petitioner has no actual knowledge as to whether or not those so dead left surviving any next of kin entitled to inherit under the statute of descents and distribution in force in Alabama on the date of the execution of said will, and if they did leave next of kin petitioner does not know whether or not said next of kin are over or under the age of twenty-one years. Petitioner further alleges that it has no actual knowledge as to whether or not any or all of the above named, Minna (Speier) Steigerwald, Malwine (Speier) Hartman or Willie Kaufman, or any of them or any of kin as provided in said will are or were of sound mind."

The trial judge ordered process to be served on the Alien Property Custodian at Washington, D. C., and publication of notice to the non-residents in the Mont-

gomery Weekly, a newspaper published in Montgomery.

The register certified that the order of publication was duly published as ordered, and notice sent to the Alien Property Custodian by registered mail, who, in writing, accepted service for the alleged aliens; and filed a motion for a stay of the proceedings during the war with Germany and for six months thereafter for the reason that:

"The Trading with the Enemy Act expressly provides 'that an enemy * * * may defend by counsel any suit in equity or action at law which may be brought against him.'—50 U.S.C.App. § 7 (b). The courts have recognized the right of any enemy to defend any action brought against them as being fundamental. It would be superfluous to state that both by common law and statute an enemy is a person of any nationality residing within the territory, including that occupied by the military and naval forces, of any nation with which the United States is at war. Whether or not the three non-residents are enemies, their right to defend this action is obviously beyond question and lack of means of communication still deprives them of their right and opportunity to come before the court. To safeguard their fundamental rights a stay is necessary.

"The right of an enemy to defend was clearly and definitely determined by the United States Supreme Court in Watts, Watts & Co. v. Unione Austriaca di Navigazione, 248 U.S. 9, 39 S.Ct. 1, 63 L.Ed. 100, 3 A.L.R. 323, and in that case a stay was granted even though facts had already been stipulated. In the language of the court:

" 'The respondent, although an alien enemy is, of course, entitled to defend before a judgment should be entered. Windsor v. McVeigh, 93 U.S. 274, 23 L.Ed. 914; Hovey v. Elliott, 167 U.S. 409, 17 S.Ct. 841, 42 L.Ed. 215. It is now represented by counsel. But intercourse is prohibited by law between subjects of Austria Hungary outside the United States and persons in the United States. The Trading with the Enemy Act of October 6, 1917, paragraph 3 (c) 106, 40 Stat. 411, [50 U.S.C.A.Appendix, § 3]. And we take notice of the fact that free intercourse between residents ·of the two countries has also been physically impossible. It is true that more than three years ago a stipulation as to the facts and the proof of foreign law was entered into by the then counsel for the respondent who has since died. But reasons may conceivably exist why that stipulation ought to be discharged or modified, or why it should be supplemented by evidence. We cannot say that, for the proper conduct of the defense, consultation between client and counsel and intercourse between their respective countries may not be essential, even at this stage. The war precludes this.'

" 'Under these circumstances, we are of the opinion that * * * no action should be taken * * * until, by reason of the restoration of peace between the United States and Austria Hungary or otherwise, it may become possible for the respondent to present its defense adequately. Compare The Kaiser Wilhelm II, 246 F. 786, L.R.A. 1918C, 795; Robinson & Co. v. Continental Insurance Company of Mannheim, 1 K. B. 155 (1915).' (p. 23).

"This leading case has been followed in litigation during the present conflict in S. K. Adams Inc. v. Mitsubishi Shoji Kaisha Ltd., 178 Misc. 689, 37 N.Y.S.2d 533; Murray Oil Products Co. Inc. v. Mitsui & Company, Ltd., 178 Misc. 82, 33 N.Y.S.2d 92; Id., 263 App.Div. 979, 34 N.Y.S.2d 137. In the latter case the court, following its citation of the Watts, Watts & Company case, stated: 'that the interests of some of our citizens may be prejudiced by halting the prosecution of a case during the war would not justify the court in failing to enforce the settled and stipulated law. Rothbarth v. Herzfeld, 179 App.Div. · 865, 167 N.Y.S. 199, affirmed 223 N.Y. 578, 119 N.E. 1075.' "

The trial court also appointed L. A. Sanderson, an attorney of Montgomery, Alabama, as guardian ad litem to represent the interests of any person or persons of unsound mind, known or unknown, and any minor, known or unknown, who may be interested ,or affected by this proceeding. He filed written acceptance, and made a motion for a stay of the proceeding, similar to that filed by the Alien Property Custodian, and included in it a demurrer to the bill, assigning various grounds, and an answer putting in issue the allegations of the petition.

The resident legatees filed an answer admitting the allegations of the petition.

The court overruled the motion to stay the hearing, and the demurrer of the guardian ad litem, and proceeded to hear the petition on the evidence of witnesses examined in open court before him. On

498

such hearing the trial court granted the petition, and decreed for petitioner on the three special features of the prayer as above set out.

The guardian ad litem has brought this appeal assigning as error the overruling of his motion to stay and of his demurrer, and in rendering the final decree. Such are the issues now before us.

The effect of overruling this motion on the rights of the foreign legatees in question, and whether it was prejudicial, may be considered and determined by us in the light of the ultimate conclusion which we have reached. So considered, we think the ruling of the trial court will not work to their prejudice.

The contention by appellant on demurrer is that the will makes the conclusion of the trustee final if it determines that the legatees have resided in Germany, which is at war with the United States, and has been since before June 1, 1943, when the trust came into existence, and therefore there is no occasion for a court of equity to approve or disapprove that determination, and its disapproval would be ineffective, since the decision of the trust is final and conclusive.

The principle has been declared that under such circumstances no one except the trustee, or another with his approval, may invoke the jurisdiction of a court of equity merely to approve that sort of determination. Baer v. Kahn, 131 Md. 17, 25, 101 A. 596; Gottschalk v. Mercantile Trust Co., 102 Md. 521, 526, 62 A. 810; York v. Maryland Trust Co., 149 Md. 608, 131 A. 829; Perry on Trusts, sec. 474, 508 to 511; 65 Corpus Juris 679, note 90. But a legatee may come into equity to enforce payment of his legacy by a refractory executor. Huckabee v. Swoope, 20 Ala. 491. Therefore the demurrer was properly overruled.

If the sole object of the bill were to approve the award, it would nevertheless be pertinent to determine the nature and extent of the jurisdiction and duty of the court in giving or withholding its approval to such determination. It is said in the will that the power in the trustee is final and conclusive when exercised in good faith. It cannot be attacked except for fraud, bad faith or the failure to observe the principles of fair play. Coker v. Coker, 208 Ala. 354, 94 So. 566; Hoglan v. Moore, 219 Ala. 497, 122 So. 824.

This proceeding is not primarily an attack on that determination, but it invites such an attack, and must be considered and treated on the basis of such an issue. The answer of the guardian ad litem does not do so expressly, but we cannot give approval to the determination, except upon a consideration of that issue in respect to parties not in position to assert antagonistic contentions. This proceeding bears similarity to a suit in equity to enforce an award. In such a suit the correctness of the award is involved, though not under attack by cross-bill. Black v. Woodruff, 193 Ala. 327, 69 So. 97, Ann.Cas. 1918C, 969. The terms of the finding by the trustee, and facts on which it acted are not here expressly stated. This should better have been by a written award, though this is not necessary. For analogy, see 6 C.J.S., Arbitration and Award, § 73, p. 212.

The question for consideration is not to be tried de novo in the circuit court, nor in this Court on appeal now whether the facts presented to the trustee justify such determination as a matter of fact or law. The decree of the trial court is that the trustee in making its award acted in good faith. In so doing, it was amply supported by the evidence. But having made that determination, the court, though finding that there is no element of bad faith in it, cannot order its enforcement unless justified by a proper interpretation of the will, and should not do so then unless it would be just and equitable under existing conditions.

The bill does not rest its prayer with an approval of the award, but as we have shown it seeks court authority and direction in payment of the legacies involved and a determination by the court as to the effect of its award on the rights of the respective legatees.

The following quotation is pertinent:

"The situation is precisely analogous to that which arises when by agreement of the parties a matter in difference has been submitted for decision to a referee or arbitrator. In such case the award is conclusive unless it can be impeached for fraud, misconduct, or mistake, and it is to be noted that mistake here does not mean error in judgment on matter of fact or law, but a failure to know some material fact or legal right in the light of which their judgment should have been, but was not, exercised." Ex parte Wells' Estate, 156 Wis. 294 (6), 144 N.W. 174, 178.

■ The testatrix in the instant case has named an arbitrator, so to speak, between respective persons named in the will as legatees, and given him power to make an award and declared the effect of the award. The legatees have no rights to be determined, but their prospects to be a legatee may simply be annulled by an unfavorable award. We agree as held in the Wisconsin case, supra, that there is much similarity to an award by arbitrators to whom a controversy has by agreement been submitted. This suit presents the same legal question in respect to whether the award should be now carried out, as one in equity to require the enforcement of an award as in Black v. Woodruff, supra. As there held (see page 336, of 193 Ala., at page 99 of 69 So., Ann.Cas.1918C, 969), it appeals to the sound discretion of the court, and also involves a determination of the rights of the parties under its power.

■ It is in the first place a question of the proper interpretation of the will to decide whether the testator meant to exclude the foreign legatees because of their residence in Germany, at war with us during the existence of the trust, if such residence was involuntary. That question—of whether the residence was voluntary—could also have been submitted to the decision of the trustee, making it effective though erroneously decided. 6 C.J.S., Arbitration and Award, § 105, p. 251. But it was not submitted to the trustee. It is not the province of an arbitrator or trustee under such a power to interpret the meaning of the instrument submitting the matter for its determination. 6 C.J.S., Arbitration and Award, § 27, p. 166.

The question of whether residence in Germany, if involuntary, would annul the legacy under its terms, is based on a theory which has given rise to much controversy among the various courts. See, Huckabee v. Swoope, 20 Ala. 491; 76 A.L.R. 1342.

■ Undoubtedly the testatrix could make such legacy depend upon residence whether voluntary or compulsory, since she may attach any condition to its force and effect which she chooses not violative of law or public policy. Hartwell v. Mobile Towing & Wrecking Co., 212 Ala. 313, 102 So. 450, 461; Antone v. Snodgrass, 244 Ala. 501, 14 So.2d 506; Donegan v. Wade, 70 Ala. 501, 67 A.L.R. 52; Huckabee v. Swoope, supra.

■ This Court will not enforce the award if it should find the will to mean that the residence must be voluntary in order to annul the legacy, and then if it is decided by the court that such residence was in fact involuntary.

■ That the legatees were residing in Germany at war with us after the trust commenced, June 1, 1943, has been decided by the trustee, and that is conclusive, since six months have passed. But should that determination be effective on those legatees before such time has arrived when they could be heard on the proper meaning and effect of the will in that respect? They had no notice of a proposal by the trustee to make the determination, and notice was not required to be given. They had no actual notice of this proceeding for approval of that determination. Would it be fair to them to cut them off from being heard on the justiciable questions involved, until they have some liberty of residence and communication? They ought to have an opportunity to be heard on the legal question of whether on a proper interpretation of the will they are cut off by an *involuntary* residence in Germany at war with us since the trust began to be operative. They ought to be heard on the question of fact, if the legal question is resolved in their favor, of whether their residence in Germany was involuntary. Upon the simple question, if that were all, of whether they have so resided in Germany during that period, not considering the question of whether it was voluntary, the determination of the trustee cannot be held to be unfair or arbitrary.

While we think the trustee was justified in finally determining that the foreign legatees resided in Germany during the war and since the trust came into operation; yet the effectiveness of that determination as approved by the court should be suspended and held in reserve until there is such termination of hostilities with Germany as to permit Jews voluntarily to remove from there, or have free communication with residents of this Country. Those legatees are said to be Jews.

In reaching the conclusion stated, we have given consideration to the cross-appeal of the trustee, and its assignments of error. We do not think a separate discussion of its assignments is needed. The conclusion which we have reached disposes of them as indicated above.

The decree of the circuit court is modified so that it will not be final but interlocutory, and so that its effect will be held in suspense until the circuit court shall upon application find that on account of war conditions Jews residing in Germany may voluntarily remove from there or have free communication with residents of this Country, and shall then make an order that the foreign legatees shall have six months thereafter to appear in that court and be heard on the matters proper for judicial consideration as we have hereinabove stated, or, in default, that the decree heretofore entered shall be made final and effective.

The court shall at that time cause such notice to be given them of their right to appear and contest the matter to be determined as may be available according to equity rules.

Modified, affirmed and remanded.

GARDNER, C. J., and THOMAS and LIVINGSTON, JJ., concur.

## On Rehearing.

FOSTER, Justice.

This is a petition by the trustee to the court which already has assumed jurisdiction of the execution of the trust. It is said in Perry on Trusts, section 511: "If the administration of the trust is thus rightfully brought within the jurisdiction of the court, the power (discretionary) may be required to be exercised under the eye of the court, though the exercise of it must still remain in the discretion of the trustee, and not of the court."

We would not say that the court should delay the exercise of the judgment of the trustee as set out in the instant case until effectual notice can be given to the foreign legatees, since it is but a proceeding in the orderly course of administering a trust already in equity, in which notice to them is not contemplated by the will nor required by law. And while "it is always a question for the courts to determine whether action of the trustees in a given case is within the discretionary powers given them by the instrument of trust," Perry on Trust, section 508, the courts will not exercise that power so as to cut off designated legatees under a will without giving them an opportunity to be adequately heard. The Act of Congress and decision of the Supreme Court of the United States, cited supra, are clear to the effect that when there is a complete absence of intercourse between residents of this Country and the one at war with us, in which the interested parties are supposed to have their residence, no court action affecting their rights should be taken until it may become possible for the foreign persons to present their claim adequately. They are not here fully represented. There is no provision of law for a guardian ad litem for them. His appointment is based on a possibility that there may be minors or insane persons interested. There is no authority for such assumption. He does not in truth represent them, and neither does the alien property custodian fully do so. He is not possessed of the necessary information. They are not completely and adequately represented.

But the argument is made that the award of the trustee is conclusive to cut them out, and they need no representation. If so, there is no need of a decree of a court of equity to that effect. The fact that a decree is sought implies a necessity for an opportunity to defend.

Ordinarily when the trustee seeks guidance and instruction from the court as to his duty under the terms of the trust instrument, equity will take jurisdiction because such instrument is ambiguous and uncertain in its meaning, or difficult and embarrassing in its interpretation. Sellers v. Sellers, 35 Ala. 235; Gilmer v. Gilmer, 245 Ala. 450, 17 So.2d 529; Carroll v. Richardson, 87 Ala. 605, 6 So. 342, and others cited in the Gilmer case.

If it is clear and precise with no uncertainty, the court will not as a rule take the trouble to say so in the exercise of its jurisdiction, unless an actual controversy exists between adverse claimants as to it. If the mere exercise by the trustee of its discretion is sufficient to exclude them, without court action, then court action should not be asked in the absence of an actual controversy. If it is asked of the court, it can only be granted when there is ground for a controversy in that respect, or one actually exists. If there is such, then under the decision cited of the United States Supreme Court, supra, the alien residents in enemy territory should have a chance to be adequately represented. If there is not, then no decree ought to be rendered on that aspect of the bill. Since that is asked of the

·court, its hearing ought to be delayed until notice to the foreign legatees means something more than form. That is all we have here directed, and we adhere to that conclusion.

Application overruled.

GARDNER, C. J., and THOMAS and LIVINGSTON, JJ., concur.