LEWIS BAER, Trustee,

*vs.*

LENA KAHN and BENJAMIN KAHN, Guardian of
Lewis, Arthur and Rosanna Kahn, Infants.

*Trustees: with discretion as to investments; beneficiaries' right*
*to be kept informed; duty of trustee when court*
*supervises administration.*
*Attorney's fee.*

In general, the request of the *cestui que trust,* that he be in-
formed by the trustee of the securities in which the estate is
invested, is a reasonable one, and one that should be granted.

p. 28

If such information is necessary, in order to ascertain whether
the trustee is executing the trust fairly and without abuse of
the discretion reposed in him, a court of equity, upon being
applied to, should order the information to be given.      p. 28

But in the absence of any proof of bad faith, or of abuse of
authority, the mere refusal of a trustee to disclose to the *cestui
que trust* the securities in which the estate is invested, is no
justification for a court of equity, at the instance of the *cestui
que trust,* to assume jurisdiction and require the trustee to re-
port under the 31st Rule of Court, where, under the will, the
trustee had full power and discretion to invest and reinvest, as
he might see fit.                              p. 28

In general, equity will not interfere with trustees so long as
they act in good faith and with reasonable discretion.      p. 26

Where a court of equity assumes jurisdiction of a trust and
directs it to be executed under its direction and supervision, the
situation of the trustees is thereby so far changed that they
must thereafter secure the sanction or ratification of the super-
vising court for the successive steps of their administration.

p. 25

Where the court was not authorized to assume supervisory jurisdiction of the administration of the trust estate upon the facts presented by the bill, answer and replication, it was: *Held,* that an order directing the plaintiff's counsel to be paid out of the trust estate was erroneously passed.     p. 29

*Decided June 27th, 1917.*

Appeal from Circuit Court No. 2 of Baltimore City. (DUFFY, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Alfred S. Niles* and *Chester F. Morrow* (with whom was *Carlyle Barton* on the brief), for the appellant.

*Allan H. Fisher* (with whom was *Samuel J. Fisher* on the brief), for the appellees.

PATTISON, J., delivered the opinion of the Court.

The appeal in this case is from two orders of the Circuit Court No. 2 of Baltimore City.

By the first of these orders the Court assumed jurisdiction of the trust estate of Lena Kahn. The second directed the trustee to pay to her solicitor for his services the sum of one hundred dollars, seventy-five dollars of it to be paid out of the corpus of the estate and twenty-five dollars out of the income.

The facts alleged in the bill filed by the appellees are substantially as follows:

Lewis, Moses and Solomon Baer for a number of years successfully conducted the hide, fur and wool business in the

City of Baltimore under the firm name of Lewis Baer & Company. In 1905 the firm purchased about nine thousand dollars of the capital stock of B. Kahn & Bros. Company, a corporation of which Benjamin Kahn, husband of Lena Kahn, was manager. This corporation was not prosperous, and as a result of said investment Lewis Baer & Company lost about three thousand dollars. This loss, it is alleged, produced an unfriendly feeling on the part of Lewis Baer for both his sister and her husband, Benjamin Kahn, in consequence of which, he wrongfully contended that the said nine thousand dollars, although in the nature of an investment, was in fact a loan to his sister and her husband, and he unreasonably demanded and received from them their note for the payment of said sum of three thousand dollars, the amount so lost by the firm.

Solomon Baer died in 1913. In his will he bequeathed certain sums of money in trust to Lewis and Rebecca Baer for the benefit of Lena Kahn and her minor children. A petition was filed by those named as trustees, asking to be relieved of the administration of the trust, but thereafter Lewis Baer consented to serve, and Samuel J. Fisher, the appellees' solicitor in this case, was appointed to serve with him as co-trustee. Lewis Baer afterward withdrew as trustee and Fisher thereafter acted as sole trustee.

In March, 1915, Moses Baer died, and by his will dated May 27th, 1914, he bequeathed two thousand dollars to Arthur Kahn, two thousand dollars to Lewis Kahn and eight thousand dollars to Rosanna Kahn, children of Lena Kahn, and twenty-four thousand dollars to Lewis Baer in trust for Lena Kahn.

The provision creating said trust is found in the fourth item of his will, which is as follows:

"I give and bequeath unto my brother, Lewis Baer, the sum of twenty-four thousand dollars ($24,000.00), in trust and confidence, to hold the same, *make such investments or reinvestments thereof as he, in his discretion, may see fit,* defray all necessary expenses

thereon, and pay the net income arising therefrom, quarterly, unto my sister, Lena Kahn, for and during the term of her natural life, * * * . Upon the death of my said sister, Lena Kahn, this trust shall cease, and said property and estate held in trust at the time of her death under this paragraph of my last will and testament, shall then vest absolutely, free and clear of all trusts, in her children then living, and the then living descendants of any deceased child of my said sister, Lena Kahn, *per stirpes* but not *per capita,* share and share alike, absolutely."

In the further disposition of his property one-third of his estate was devised to his wife, Mamye Baer, and after making smaller bequests to another sister and several nieces and a nephew, he gave the residue of his estate to his brother Lewis absolutely.

In the seventh clause of his will is found the following provisions:

"I empower my said trustee * * * *to invest all moneys or funds* held in trust under this, my last will and testament, *in such securities as he * * * may see fit, and to change the investment thereof, when, as often and in such manner as my said trustee * * * may deem advisable.* I also authorize and empower my said trustee * * * at any time, during the existence of the trust set forth in this, my last will and testament, to sell, assign and convey any of the trust property, original or substituted held under this, my last will and testament, for the purpose of investment, reinvestment, distribution, division, or any other purpose whatsoever, and to execute, acknowledge and deliver any deeds or instruments of writing that may be necessary to carry these powers into effect, and no one dealing with my said trustee or any successor, appointed by a court of competent jurisdiction, shall be required to see to the application of any purchase money."

Several days after the death of Moses Baer his will was read, and immediately thereafter, as the bill alleges, Lewis Baer "burst into tears," and told his sister, Lena Kahn, "that the sudden death of his two brothers within so short a time necessitated the withdrawal of an unusually large amount of cash from the firm of Lewis Baer & Company, which he feared would cause financial disaster to him," and "that if he had the amount which he had lost in the B. Kahn Bros. Company that it would to some extent help him out of his difficulty." It was then that Lewis Baer informed his sister that in addition to the bequest made to her in his will, Moses Baer had a policy of insurance on his life for the sum of five thousand dollars, which upon his death was payable to her and her daughter Rosanna in equal shares, "and begged her to assign that to him in part payment of the alleged indebtedness." She finally agreed, over the protest of her husband, to pay fifteen hundred dollars out of the proceeds of the policy upon the note previously given by her and her husband.

It was then charged that, notwithstanding the alleged need of money to save the firm from financial difficulties, Lewis Baer shortly thereafter purchased an automobile for his own pleasure, for which he paid about fourteen hundred dollars.

The further charge was made against Lewis Baer that in order to increase the residue of the estate that was devised to him he delayed stating his final account as executor, which resulted in financial loss and injury to Lena Kahn.

The bill then alleges that on April 18, 1916, she requested her attorney, Mr. Fisher, to write Judge Niles, attorney for the defendant, for information regarding the manner in which the *corpus* of her trust estate would be invested, suggesting that as much as possible of it be invested in ground rents, yielding a net income of from five to six per cent., and that the estate be administered under the supervision, direction and control of a Court of Equity.

Mr. Fisher wrote Judge Niles, as requested, and received in response thereto two letters. In the first Judge Niles stated "that his letter had been referred to Mr. Baer," and in the second, "that he did not represent Mr. Baer in the matter of the trust estate of Lena Kahn, and suggested that Mr. Fisher write Mr. Baer direct," which he did.

"Several days thereafter, Mr. Baer called to see Mr. Fisher, and informed him that he had procured a safe deposit box exclusively for the securities of this trust estate, but he refused to divulge the securities in which the corpus of the estate had been invested, and declined to ask one of the equity courts of the city to assume jurisdiction of the trust."

On July 5, 1916, Mrs. Kahn received from Lewis Baer, as trustee, his check for the amount then due and owing to her as income from the trust estate, and accompanying said check was a statement showing how a part of said funds was at that time invested. Thereafter, on the same day, Mr. Fisher, at the request of his client, again wrote the trustee, Mr. Baer, asking how the remainder of the trust fund had been invested, and asking him to petition to a court of equity to assume jurisdiction of said trust, to which letter no answer was received, either by her or her attorney.

The bill concludes with a prayer asking the Court to assume jurisdiction of the trust, and that the trustee be directed to administer said trust under the supervision, direction and control of the equity court.

Lewis Baer admitted many of the allegations of the bill, but denied that he had lost his affection for his sister, or that he had ever treated her with rudeness or incivility or had by undue pressure induced her to sign the note alluded to, or to make payments thereon, or that he had ever refused to give her or her counsel any information "that she was entitled to receive," or that he had ever made untruthful statements to her or to her counsel, or that in his actions as

trustee he had shown or that he would show any spirit of vindictiveness.

The answer then avers that he is not impressed with the safety or desirability of such ground rents as can now be had which will yield five or six per cent. net upon the money invested. He then, in his answer, gives a full statement showing how and in what securities the entire trust estate was at such time invested.

The answer further avers his unwillingness to retire voluntarily from said trusteeship, as it was his brother's will that he should serve as trustee, and that in his opinion the provisions found in the will of his brother were made for the express purpose of confiding the management of the estate and the investment of his funds solely to his judgment, and, because of the wishes of his brother, expressed not only in the will, but to him personally, and because of the expense that would necessarily be involved if the estate was administered under the supervision of the Court, he "does not feel justified in giving his assent to the administration of the trust under the direction of this Court."

To the answer a general replication was filed, and thereafter an order of the Court was passed, at the instance of the plaintiff, granting leave to take testimony orally in open court.

Upon the call of the case on the day set for hearing counsel for the plaintiff read the bill filed; counsel for the defendant thereupon read the answer, and having finished reading the answer said to the Court that it might serve to explain the case and somewhat clarify the issues if he made a brief statement. His statement, as requested, was then made and it, with what followed at such time, was at the request of the counsel in the case certified to by the Court.

This certificate as found in the record is as follows

"Counsel for the defendant thereupon stated that many of the statements contained in the bill of complaint were, in his opinion, irrelevant, but that it was true that the three brothers named in said bill, viz,

Lewis Baer, Moses Baer and Solomon Baer, had engaged in business together; that Solomon Baer died about the year 1913, leaving Lewis Baer, one of his trustees, and that Lewis Baer afterwards resigned from said trust. The counsel further stated that the defendant expected to prove that Mr. Moses Baer at the time when Mr. Lewis Baer resigned the trusteeship as aforesaid, said to Lewis Baer that he hoped that Lewis would not resign from the trust which would be imposed upon him by the will of said Moses. The counsel further stated that he expected to prove that Moses Baer had told Lewis Baer that he did not wish his estate to be administered in Court, but desired that the expense of a Court administration should be saved.

"After the counsel for the defendant had made these statements, the Court stated that 'he was not impressed by anything contained in them as being sufficient to prevent the Court from assuming jurisdiction.'"

The securities belonging to the said trust estate as set out in the answer were shown to the Court, and "certain authorities were then read to the Court after which the Court (while approving of the investments made by the trustee) stated that he would sign an order assuming jurisdiction of the trust. The Court further stated that all trustees, where it can be reasonably done, should be required to administer their trusts under the jurisdiction of the Court and to report under the Thirty-first Equity Rule. No evidence was taken."

Thereafter, on February 2nd, 1917, the Court passed an order assuming jurisdiction of the trust estate, and requiring the trustee to report to it, in accordance with its Thirty-first Equity Rule; and on the 5th day of the same month the Court passed its second order, ordering and directing Lewis Baer to pay to Mr. Fisher, counsel for the appellees, the sum of one hundred dollars for his services, and that seventy-five dollars of said fee should be paid out of the corpus of said estate and twenty-five dollars out of the income.

It was from the action of the Court in granting these or-
ders that this appeal is taken.

We will first consider the action of the Court in passing
the order of February 2nd.   Under it the Court assumed
jurisdiction of the trust and required the trustee to report to
it under its Thirty-first Rule.

In *Abell* v. *Abell,* 75 Md. 64, this Court, in speaking of
the powers of the trustees, after the Court has assumed juris-
diction of the trust, said: "Whatever their powers may be
under the will, if the trusts created thereby are before such
a Court, 'and a *decree* has been made, the power of the trus-
tees are thenceforth so far changed that they must have the
sanction of the Court for all their acts'; 2 *Perry on Trusts,*
sec. 474, and authorities there cited."

In the later case of *Gottschalk* v. *Mercantile Trust Co.,*
102 Md. 526, this Court said: "If trustees undertake to ad-
minister their trust without seeking the aid and protection
of any Court, they may exercise the discretion, and execute
the powers conferred on them by the instrument creating the
trust, and equity will not generally interfere with them so
long as they act in good faith and with fair discretion.   But
if, upon their application or that of their *cestui que trust,*
with their consent, a Court of Equity, by an appropriate de-
cree, assumes jurisdiction of the trusts and directs them to
be executed under its direction and supervision, the authori-
ties agree that the situation of the trustees is thereby so far
changed that they must thereafter secure the sanction or
ratification of the supervising Court for the successive steps
of their administration of the trust.   *Perry on Trusts,* 474;
*Lewin on Trusts,* 11 Ed. page 753."

The Court in this case not only assumed a general juris-
diction of the trust estate, but it directed the trustee to re
port to it annually, under its Thirty-first Rule.   By this rule
the defendant, as trustee, was required to report specifically
the securities in which the trust estate was invested, that the
same might receive the sanction and approval of the Court.

The Court by said order abridged the discretionary powers. of the trustee conferred upon him by the will creating the trust, and consequently interfered with him in the exercise of such powers.

As to the rights of courts to interfere with the exercise of discretionary powers vested in trustees, in the administra-- tion of trust estates, it is said in 39 *Cyc.* 316: "The Court will neither enlarge nor restrict the powers given the trustee by the instrument creating the trust * * * nor, except where an intention of the settlor that the execution of the trust shall be under the supervisory control of the Court is mani-- fest in the instrument creating the trust, will it, of its own motion or at the instance of interested parties, interfere with. the performance of the duties of the trustee, and exercise the discretionary powers conferred upon him, unless there is. shown bad faith on his part, or a gross and arbitrary use of discretion, or a complete refusal to act in the premises."

The same principle is laid down in *Shelton* v. *King,* 229 U. S. 94, where it is said: "It is a settled principle that trustees having the power to exercise discretion will not be interfered with so long as they are acting *bona fide.* To do so would be to substitute the discretion of the Court for that of the trustee." See also the cases of *Sharon* v. *Simons,* 30 Vermont, 458; *Larkin* v. *Wikoff,* 75 N. J. Equity, 480;. *Browning* v. *Stiles,* 65 Atlantic (N. J.) 457; *Dillard* v. *Dil-lard's Ex'rs.,* 21 S. E. (Va.) 669. In *Naglee Estate,* 52 Pa. St. 154, and in other cases in appellant's brief.

The law as stated in these cases is also the law of this State.

In *Pole* v. *Pietsch & Thiede,* 61 Md. 572, this Court said: "In the exercise of the discretionary power thus conferred on the trustee, a Court of Equity had no right to interfere, pro- vided it is honestly and reasonably exercised. They must, however, act in good faith, having a proper regard to the wishes of the testator and the nature and character of the

trust imposed on them." *Clark* v. *Parker,* 19 Ves. 1; *French* v. *Davidson,* 3 Madd. 396; *Kemp* v. *Kemp,* 5 Ves. 849.

And it is said in the later case of *Levi* v. *Bergman,* 94 Md. 209, that "It must be conceded that if the trustees act in the attempted exercise of their discretion within the limitations imposed upon them by the will itself, a Court of Equity can not interfere, provided such discretion is reasonably and honestly exercised; and we said in *Gottschalk* v. *Mercantile Trust Co., supra,* 'Equity will not generally interfere with them (trustees) so long as they act in good faith and with reasonable discretion."

The hearing in this case was upon bill, answer and replication, without proof, and the question therefore is, whether the Court upon the application of the principles here stated was authorized to interfere with the trustee in the exercise of the discretion conferred upon him by the will of his brother.

The bill alleges certain acts of the trustee that were in no way connected with the execution of the trust, as tending to show a hostile feeling towards his sister, Mrs. Kahn, but he in his answer denies, in substance, any such feeling, and alleges that he still has a fraternal affection for her; and although the bill alleges that she suffered financial loss and injury because of his delay in stating his final account, as executor of his said deceased brother, it is conceded that in doing so he acted within the law and as he had a right to do.

Under the will of Moses Baer, the defendant, as trustee, is given broad discretionary powers in the management of the trust estate. He is given the power to invest all money or funds of the trust estate in such securities as he may see fit, and to change the investment when, as often and in such manner * * * as he may deem advisable, and yet, notwithstanding these powers so vested in him, we find his sister, the plaintiff, a short while after the death of the testator, suggesting, through her counsel, not only the securities in which he should invest the trust estate, but that he apply to

a Court of Equity to assume jurisdiction of the administration of the trust, whereby the sole discretionary power would no longer be lodged in him.

It is disclosed by the answer that he, in the exercise of his judgment, did not deem it advisable to invest the estate in the securities suggested by the *cestui que trust;* and he refused to apply, as requested, to the Equity Court to assume jurisdiction of the trust.

It is also alleged that he thereafter refused to disclose to her, or to her counsel, the securities in which the estate was at such time invested. In answer to this, he states that he did not refuse "to give her or her counsel any information that she was entitled to receive." It may be said of this answer that it is not a sufficient or direct answer to the charges against him that he had refused to give to the plaintiff the information sought by her. But, nevertheless, it is disclosed by the record that at such time the estate was invested by him in securities that in these proceedings received the sanction and approval of the Court.

The alleged refusal of the defendant to inform the plaintiff as to the securities in which the estate was invested is practically the only act of the defendant to be considered by us in determining whether he has, as alleged, acted in bad faith and has abused the discretionary power lodged in him under the will, justifying a Court of Equity to assume jurisdiction of the trust, and direct the trustee to report to it under its Thiry-first Equity Rule; and it, we think, fails to disclose such want of good faith or arbitrary action on the part of the trustee in the exercise of his discretionary powers as to warrant such action of the Court.

We may add, however, that the request of a *cestui que trust* that he be informed by the trustee of the securities in which the estate is invested is a reasonable one, and one that should be granted, and the information given, if at no other time, when the trustee accounts for and pays over to the *cestui que trust* the interest profits and incomes from the trust estate,

to which he may be entitled; and if such information be necessary in order to ascertain whether the trustee is executing the trust fairly and without abuse of the discretionary power reposed in him, a Court of Equity, upon being applied to, should order such information to be given; but until that is done and it is found that the trustee is not administering the trust in good faith, or is abusing the discretionary power granted him under the will, the Court should not against his wishes assume supervisory jurisdiction of the trustee's discretionary powers.

The other order, as we have said, directed the trustee to pay to Samuel J. Fisher the sum of one hundred dollars for his services as counsel for the plaintiff in these proceedings, seventy-five dollars of which was ordered to be paid out of the corpus of the estate, and the balance, twenty-five dollars, out of the income of said estate.

As we hold in this case that the Court was not authorized to assume supervisory jurisdiction of the administration of the trust estate upon the facts presented by the bill, answer and replication, the order directing the plaintiff's counsel to be paid out of the trust estate was erroneously passed.

There is a motion in this case to dismiss the appeal upon several grounds therein stated, but none of them, in our opinion, justify a dismissal of the appeal.

It follows, therefore, from what we have said that the two orders appealed from will be reversed.

*Orders reversed and bill dismissed, with costs to the appellant.*