NATIONAL BANK OF TOPEKA, as Administrator of the Estate of Robert Lee Graham, deceased,

v.

William Axer GRAHAM and Union Trust Company of Maryland, individually and as trustees under deed of trust from Robert Lee Graham, dated May 21, 1949.

Civ. No. 9900.

United States District Court
D. Maryland,
Civil Division.

Nov. 18, 1957.

**472**

Herbert R. O'Conor and Herbert R. O'Conor, Jr., Baltimore, Md., and J. A. Dickinson, Topeka, Kan., for plaintiff.

J. Gilbert Prendergast and Richard W. Case, Baltimore, Md., for William Axer Graham, individually and as one of the trustees.

Cable & McDaniel, John W. Cable, III, and John S. McDaniel, Jr., Baltimore, Md., for Union Trust Co. of Maryland, individually and as one of the trustees.

THOMSEN, Chief Judge.

■ Plaintiff, administrator of the estate of Robert Lee Graham, who died on March 21, 1957, has sued defendants, individually and as trustees under a deed of trust from Robert Lee Graham dated May 21, 1949, seeking (1) a "judgment requiring defendants to pay over and deliver to the plaintiff the corpus and undistributed income of said trust estate", (2) "a further judgment for all loss, diminution, damage, attorneys fees, and expenses occasioned by the failure and refusal of the defendants seasonably to pay over and deliver the same", and (3) "a further judgment for such further accountings and other relief as may be proper". Defendants seek dismissal of the action on the ground that this court lacks jurisdiction because, before this action was filed, an equity court of the State of Maryland had assumed jurisdiction of the administration of the trust. Both sides have filed affidavits, in support of and in opposition to defendants' motion to dismiss. It should, therefore, be treated as a motion for summary judgment.

By deed of trust dated May 21, 1949, Robert Lee Graham, a former resident of Baltimore, Maryland, then residing in Beverly Hills, California, transferred to William Axer Graham and Union Trust Company of Maryland, both of Baltimore, Maryland, certain securities and cash in trust to hold, etc. and, with certain exceptions, to pay over the net income to the grantor for life. The deed then provided: "Upon the death of the Grantor, this Deed of Trust shall terminate and the corpus thereof and any undistributed income shall be paid over to the executor or administrator of the estate of the Grantor and shall be treated and disposed of in all respects as other property comprising the estate of the Grantor".

Robert Lee Graham died intestate at Topeka, Kansas, on March 21, 1957. On April 8, 1957, defendant trustees filed a petition in the Circuit Court No. 2 of Baltimore City, a Maryland state court exercising general equity jurisdiction, wherein (1) they recited the execution of the deed of trust and the death of the grantor; (2) they alleged that various legal problems had arisen concerning further actions to be taken by the trustees in connection with the trust, including a question as to the legal domicile of the grantor at the time of his death and possible liability to the State of Maryland for Maryland inheritance tax upon the assets in the possession of the trustees, as to which the trustees would require instructions from the court; and (3) they prayed the court to assume jurisdiction of the administration of the trust and for other and further relief. On that ex parte petition, the same day, the Circuit Court No. 2 entered an order assuming jurisdiction of the administration of the trust.

Thereafter, on May 3, 1957, on the second amended petition of Carolyn M. Gra-

ham for the appointment of an administrator, and after a hearing, the Probate Court of Shawnee County, Kansas, entered an order (1) reciting that notice of hearing had been duly given by publication and mail, (2) finding upon evidence presented that Robert Lee Graham died intestate on March 21, 1957, being a resident of Shawnee County, Kansas, at the time of his death and leaving an estate to be administered therein but expressly making no finding or adjudication relative to the marital status of the decedent and the petitioner, and (3) appointing the National Bank of Topeka, of Topeka, Kansas, administrator of the estate of Robert Lee Graham, deceased.

After several months of fruitless negotiations between the administrator and the trustees and their respective counsel, the administrator filed this action in this court on August 6, 1957. The complaint alleged that at the time of his death Robert Lee Graham was domiciled in and a citizen of the City of Topeka, Shawnee County, Kansas; that plaintiff had made demand upon defendants for the corpus and undistributed income of the trust estate, but that defendants had wrongfully and vexatiously failed and refused to make such payment and delivery; that the trust estate consisted primarily of corporate stocks and municipal bonds having a value in excess of one million dollars, which had diminished in value and were in jeopardy of further diminution in value by reason of market fluctuations; and prayed for a judgment requiring defendants to pay over and deliver to plaintiff the corpus and undistributed income of the trust estate, for a further judgment for all loss, etc. occasioned by the failure and refusal of the defendants seasonably to pay over and deliver, and for such further accountings and other relief as may be proper.

On August 27, 1957, defendant trustees filed a motion to dismiss this action, alleging the assumption of jurisdiction by the Circuit Court No. 2 and the negotiations by the parties, and denying the alleged reduction in value of the trust estate. That disputed fact, however, is unimportant in this case at this time. Defendants also contend that the complaint fails to state a claim against defendants upon which relief can be granted, and that plaintiff administrator has no capacity to institute or maintain this action.

On September 13, 1957, the trustees filed a petition in the Circuit Court No. 2, advising that court of this federal court action, and alleging that various persons may have rights which may be affected by the determinations made and instructions given by the Circuit Court No. 2, and that various parties claim rights which will be affected by the orders and decrees of that court. The trustees again called the court's attention to the fact that the trust estate "may be liable for inheritance and estate taxes of the State of Maryland in the event that a determination is made that the said Robert Lee Graham, deceased, was legally domiciled in the State of Maryland at the time of his death."

On that petition the Circuit Court No. 2 entered an order on September 13, 1957, directing:

"1. That the National Bank of Topeka, as Administrator of the Estate of Robert Lee Graham, deceased, the Farmers and Merchants Office, Security First National Bank of Los Angeles, California, as Guardian of the Estates of Robert Lee Graham, Jr., DeCourcy W. Graham and Victoria M. Graham, minors, and Carolyn M. Graham, individually and as Guardian of the Estate of Cynthia Lynn Graham, minor, be made parties to the above entitled proceeding and that each of such persons be notified of this Order and served with process of this Court by publication as provided by Rule 105 of the Maryland Rules of Procedure.

"2. That Joseph P. Connor, Register of Wills for Baltimore County, and J. Millard Tawes, Comptroller of the Treasury of the State of Maryland, be made parties to the above entitled proceeding and that

each be notified of this Order by serving a copy of the aforegoing Petition and this Order upon each of them on or before the 25th day of September, 1957."

Pursuant to that order, the Attorney General of the State of Maryland has entered his appearance for the Register of Wills and for the Comptroller. The Kansas administrator (plaintiff here) and Carolyn M. Graham, individually and as guardian of Cynthia Lynn Graham, have moved to strike the order for joinder of parties and to set aside the service, without submitting to the jurisdiction of the court. Maryland Rules 124 and 323. No other non-resident has appeared in the state court proceeding.

The Maryland law imposes an inheritance tax applicable to all tangible or intangible property, real or personal, having a taxable situs in the state and passing by will or under the intestate laws of the state, or by deed, gift, grant, bargain or sale, made in contemplation of death or intended to take effect in possession or enjoyment at or after death, with certain exceptions not pertinent here. Annotated Code of Maryland, 1951 Ed., Art. 81, sec. 148 et seq. Sec. 151 provides:

"Every executor, administrator, trustee, agent, fiduciary or other person making distribution of any property passing subject to the taxes imposed by this sub-title shall be charged with the payment thereof, and shall only be discharged from liability for the amount of said tax or taxes by paying the same for the use of the State to the Register of Wills of the proper county or city, before making any distribution to the person or persons entitled. Unpaid taxes shall bear interest at the rate of six per centum per annum after the expiration of thirty days from their due date."

Maryland also imposes an estate tax, Code Art. 62A.

Although the Probate Court of Shawnee County, Kansas, has determined that Robert Lee Graham was a resident of Kansas at the time of his death, the Supreme Court of the United States has held that two or more states may each constitutionally assess death taxes on a decedent's intangibles upon a judicial determination that the decedent was domiciled within the state in proceedings binding upon the representatives of the estate. State of Texas v. State of Florida, 306 U.S. 398, 410, 59 S.Ct. 563, 830, 83 L.Ed. 817. And in Riley v. New York Trust Co., 315 U.S. 343, 62 S.Ct. 608, 86 L.Ed. 885, the Supreme Court held that even though a state court in probating a will and issuing letters testamentary expressly finds that the domicile of the testator at the time of his death was in that state, the adjudication of domicile does not bind one who is subsequently appointed as domiciliary administrator c.t.a. in a second state in which he will be called upon to deal with the claims of local creditors, including the claim of the state itself for taxes, if such administrator c.t.a. was not a party to the proceeding in the first state; and that the courts of a third state, when disposing of local assets claimed by both personal representatives, are free to determine the question of domicile in accordance with their own law.

■ The undisputed facts in the instant case justified the trustees in seeking the guidance and direction of the Circuit Court No. 2 of Baltimore City. The assumption of jurisdiction over the further administration and distribution of the trust by that court was in accordance with a long established practice in equity in Maryland. Trustees appointed by deed or will may, of their own volition and for their own protection and guidance, petition an equity court to assume jurisdiction of the trust. The proceeding is usually ex parte, although parties other than the trustees may be brought in originally, or by a subsequent petition, as was done in the state court proceedings in the instant case.

The death of the grantor did not terminate the duties of the trustees, and did not make it improper for them to seek the guidance and direction of an equity court. In Chapman v. Baltimore Trust Co., 168 Md. 254, 177 A. 285, the Court of Appeals held that where a trust has been fully administered and has ceased to exist, where nothing remains to be done but to deliver the trust property to the persons entitled to its possession, where no doubt exists as to the identity of such persons or their right to receive it, and where no question has been raised as to the trustees' acts or accounts, an equity court should not assume jurisdiction. But where the trustees have additional duties to perform (such as the determination of tax liability) or where doubt exists as to the identity of the persons entitled to receive the trust property, it is proper and customary in Maryland for trustees to seek the instructions and protection of a court of equity, which alone can insure that they receive a proper release. In re Hagerstown Trust Co., 119 Md. 224, 225, 86 A. 982; Robb v. Horsey, 169 Md. 227, 238, 181 A. 348; Morgan v. Dietrich, 178 Md. 66, 70, 12 A.2d 199; Harlan v. Gleason, 180 Md. 24, 28, 22 A.2d 579; Hitchens v. Safe Deposit & Trust Co. of Baltimore, 193 Md. 53, 66 A.2d 93; Scott on Trusts, sec. 345.1. The assumption of jurisdiction by the state court was in accordance with Maryland practice.

Although the trust property is not in custodia legis, the proceedings in the Circuit Court No. 2 are proceedings quasi in rem. Art Students League of New York v. Hinkley, D.C.D.Md., 31 F. 2d 469, 472, affirmed 4 Cir., 37 F.2d 225, certiorari denied 281 U.S. 733, 50 S.Ct. 247, 74 L.Ed. 1149; Commonwealth Trust Co. of Pittsburgh v. Bradford, 297 U.S. 613, 619, 56 S.Ct. 600, 80 L.Ed. 920; Princess Lida, etc. v. Thompson, 305 U.S. 456, 467, 59 S.Ct. 275, 83 L.Ed. 285. The Circuit Court No. 2 having taken jurisdiction over the trust, the trust property passed into the control of that court, Baer v. Kahn, 131 Md. 17, 25, 101 A. 596; United States v. Mercantile Trust Co., D.C.D.Md., 62 F.Supp. 837, 841; and under the rule of non-interference, this court is precluded from taking any action which would interfere with that control.

"It is settled that, when a state court and a court of the United States may each take jurisdiction of a matter, the tribunal whose jurisdiction first attaches holds it, to the exclusion of the other, until its duty is fully performed, and the jurisdiction involved is exhausted. * * * The rule is not only one of comity, to prevent unseemly conflicts between courts whose jurisdiction embraces the same subject and persons, but between state courts and those of the United States it is something more. 'It is a principle of right and law, and therefore of necessity. It leaves nothing to discretion or mere convenience.' Covell v. Heyman, 111 U.S. 176, 4 S.Ct. 355, 28 L.Ed. 390." Kline v. Burke Construction Co., 260 U.S. 226, 231, 43 S.Ct. 79, 82, 67 L.Ed. 226, adopting the language of a Seventh Circuit case. [Baltimore & Ohio R. Co. v. Wabash R. Co., 119 F. 678.] In Kline v. Burke Construction Co., however, both actions were in personam, and only money judgments were sought. The Supreme Court therefore held that the injunction against the prosecution of the suit in the state court involving the same issues as the prior suit in the federal court was improperly issued by the federal court.

After the decision in Kline v. Burke Construction Co. but before the decision in Princess Lida, etc. v. Thompson, discussed below, the Art Students League case arose in the District of Maryland. That case involved the question whether a son's will had properly exercised a power of appointment given to the son by his father's will over a trust created by the father's will. The trust was being administered under the jurisdiction of the Circuit Court of Baltimore City. Judge Soper, in the District Court, reviewed the decisions in the Supreme Court up to that time, and said: "It is clear that the complainant's suit does not concern property which from the view-

point of the state court is in custodia legis, and that there is no attempt to interfere with the administration of the trust by the state court. The case primarily concerns the construction of the will of the son, so as to determine whether the gift therein bestowed upon the complainant is valid. It is true that a decision in favor of the validity of the gift would necessarily involve the termination of the trust created for the benefit of the son by the father's will, and the trustees would be required to deliver the trust property to the complainant; but this incidental result, important though it may be, does not deprive the complainant of the right to apply to the federal court for an adjudication of the controversy. For these reasons, the court declined to dismiss the bill of complaint, and the trustees filed an answer which goes to the merits of the controversy." 31 F.2d at pages 472–473.

The Circuit Court of Appeals affirmed, stating that since there was nothing in the will of the father that could control the matter, the jurisdiction to construe the will of the son and to decide whether or not he had made a valid disposition of half of the property would ordinarily be in any court having general equity powers which had all the indispensable parties before it. Speaking through District Judge McDowell, the court said: " * * * we think it clear that the trustees are not officers, such as receivers, administrators, sheriffs, and marshals, whose possession of property is the possession of the court." 37 F.2d at page 226. Referring to the non-interference rule, the court said: "We believe that the rule referred to cannot apply in the case here. The senior jurisdiction of the circuit court of Baltimore city is only such jurisdiction as may be exercised in an ex parte proceeding instituted by trustees. This is confined to advising and directing the trustees. In the exercise of such jurisdiction we can conceive of no situation in which the court could possibly be compelled to assume possession and control of any of the property of the trust estate. Possession by the court's sheriff or receiver can never be necessary in merely advising and directing trustees. Disputes as to ownership of the property could not be settled in an ex parte proceeding. Proceedings against the trustees based on charges of dereliction of duty would have to be presented in a proceeding inter partes. It seems to be clear that the noninterference principle is based on a possible future need for possession of specific property by the court which has first undertaken a jurisdiction of such nature that in the course of the proceedings possession by the court (by its officer) may become necessary. Obviously, where the prior jurisdiction is of such nature that possession of property by the court can never be necessary, the rule must be inapplicable." 37 F.2d at pages 226–227.

In the later case of Princess Lida, etc. v. Thompson, 305 U.S. 456, 59 S.Ct. 275, 279, trustees had filed an account in a Pennsylvania state court whose jurisdiction and powers included the "control, removal and discharge of trustees, and the appointment of trustees, and the settlement of their accounts". The character of the jurisdiction had been described by the Supreme Court of Pennsylvania (Wilson v. Board of Directors of City Trusts, 324 Pa. 545, 551, 188 A. 588, 592) as follows: " 'The scope of supervisory control of necessity includes any matter which concerns the integrity of the trust res—its administration, its preservation, and its disposition and any other matter wherein its officers [trustees] are affected in the discharge of their duties.' " (Brackets by Mr. Justice Roberts).[1] After reviewing the

1. Equity courts in Maryland exercise similar jurisdiction over the administration of trusts. See Baer v. Kahn, 131 Md. 17, 25, 101 A. 596, 599, where it was said that if "a court of equity, by an appropriate decree, assumes jurisdiction of the trusts and directs them to be executed under its direction and supervision, the authorities agree that the situation of the trustees is thereby so far changed that they must

Pennsylvania statutes, Mr. Justice Roberts stated: "It thus appears that whether an account be filed pursuant to citation or as the voluntary act of the trustee the jurisdiction of the court attaches and may be exercised over all the matters which fall within its supervisory control of the administration of the estate." 305 U.S. at page 463, 59 S.Ct. at page 279.

After the trustees had filed their accounts in the state court, two of the five cestuis filed suit in a federal court asking that the trustees be required to answer, to restore to the trust funds the monies lost by their illegal and negligent conduct; that they be removed; that all trustees be required to give bond; and for general relief. One of the other cestuis appeared in the state court and excepted to the trustees' accounts. Mr. Justice Roberts, speaking for a unanimous court, said: " * * * it is settled that where the judgment sought is strictly in personam, both the state court and the federal court, having concurrent jurisdiction, may proceed with the litigation at least until judgment is obtained in one of them which may be set up as res judicata in the other. On the other hand, if the two suits are in rem, or quasi in rem, so that the court, or its officer, has possession or must have control of the property which is the subject of the litigation in order to proceed with the cause and grant the relief sought the jurisdiction of the one court must yield to that of the other. We have said that the principle applicable to both federal and state courts that the court first assuming jurisdiction over property may maintain and exercise that jurisdiction to the exclusion of the other, is not restricted to cases where property has been actually seized under judicial process before a second suit is instituted, but applies as well where suits are brought to marshal assets, administer trusts, or liquidate estates, and in suits of a similar nature

where, to give effect to its jurisdiction, the court must control the property. The doctrine is necessary to the harmonious cooperation of federal and state tribunals. While it has no application to a case in a federal court based upon diversity of citizenship, wherein the plaintiff seeks merely an adjudication of his right or his interest as a basis of a claim against a fund in the possession of a state court, this is not such a case. No question is presented in the federal court as to the right of any person to participate in the res or as to the quantum of his interest in it. The contentions are solely as to administration and restoration of corpus." 305 U.S. 466–467, 59 S.Ct. 280.

The opinion of the Supreme Court concluded: "The Common Pleas Court could not effectively exercise the jurisdiction vested in it, without a substantial measure of control of the trust funds. Its proceedings are, as the court below held, quasi in rem, and the jurisdiction acquired upon the filing of the trustees' account is exclusive. The District Court for the Western District of Pennsylvania is without jurisdiction of the suit subsequently brought for the same relief, and the petitioners were· properly enjoined from further proceeding in that court." 305 U.S. at pages 467–468, 59 S.Ct. at page 281. See also Toucey v. New York Life Ins. Co., 314 U.S. 118, 135, 62 S.Ct. 139, 86 L.Ed. 100; Mandeville v. Canterbury, 318 U.S. 47, 48, 49, 63 S.Ct. 472, 87 L.Ed. 605; United States v. Mercantile Trust Co., D.C.D.Md., 62 F.Supp. 837.

In the light of all those cases we must consider whether the exercise of jurisdiction by this federal court over the several claims asserted in the complaint of the administrator in the instant case would constitute an improper interference with the jurisdiction of the Circuit Court No. 2 of Baltimore City.

The first prayer of the complaint is for a judgment requiring defendants to pay

thereafter secure the sanction or ratification of the supervising court for the successive steps of their administration of the trust". This passage was quoted

by Judge Soper in Art Students League of New York v. Hinkley, 31 F.2d at page 471.

over and deliver to plaintiff the corpus and undistributed income of the trust estate. The opinion of the Supreme Court in Princess Lida, etc. v. Thompson makes it clear that the non-interference rule should be applied in the field of the administration of trusts more broadly than the dicta in Art Students League would indicate, although it does not disturb the conclusion in Art Students League that the question therein presented was one which might properly be determined by a federal court. In the instant case the trustees had instituted the proceedings in the Circuit Court No. 2 and that court had assumed jurisdiction of the trust before the Kansas administrator filed his complaint in this court, indeed before the plaintiff had been appointed administrator by the probate court in Kansas.

As we have seen, although the trust property is not in custodia legis, the proceedings in the Circuit Court No. 2 are quasi in rem. That court does not have *possession* of the trust property through any officer appointed by it, but it has and must have *control* of the trust property in order to proceed with the cause and grant the relief sought by the trustees, i. e., the guidance and direction of that court with respect to the further administration and distribution of the trust estate. The distribution must be made in accordance with the orders of *that* court, although in a proper case *this* court might adjudicate a person's right or interest as a basis of a claim against the trust estate. Mandeville v. Canterbury; Princess Lida, etc. v. Thompson; Art Students League of New York v. Hinkley; United States v. Mercantile Trust Co.

A judgment requiring defendants to pay over and deliver to plaintiff the corpus and undistributed income of the trust estate, the object of the first prayer of the complaint, would be an improper interference with the jurisdiction and control of the state court.

The second prayer is for a judgment for all loss, diminution, damage, attorneys' fees and expenses occasioned by the failure and refusal of the defendants seasonably to pay over and deliver the trust property. It is not necessary to decide whether and under what circumstances such a claim can ever be entertained by a court other than the court which has assumed jurisdiction over the further administration and distribution of the trust. The petition of the trustees upon which the Circuit Court No. 2 assumed jurisdiction alleged that there were questions as to the legal domicile of Robert Lee Graham at the time of his death and possible liability to the State of Maryland for Maryland inheritance taxes upon the assets in the possession of the trustees, as to which the trustees would require instructions from the court. Later, after the Kansas administrator had filed his complaint in this federal action, the Circuit Court No. 2 entered an order making the Kansas administrator, other non-residents, and the Maryland taxing authorities parties to the proceeding pending in that court, and directed that the administrator and the other non-residents be notified of that order and served with process by publication, as provided by Rule 105 of the Maryland Rules.

Under these circumstances, the claim for a surcharge against the trustees cannot be maintained in this court. Princess Lida, etc. v. Thompson.

The complaint also contains a prayer for "a further judgment for such further accountings and other relief as may be proper". Any "further accountings" should be in the state court. Such "other relief" should be construed to refer to relief similar to accounting.

If the question were properly presented, the administrator might be entitled to have this court pass on the question whether at the time of his death Robert Lee Graham was domiciled in Kansas and not in Maryland or elsewhere. No request for a separate determination of that narrow but basic question is before this court at this time; but even if the question were properly presented to this court, it would still be necessary to consider whether as a matter of right, or as a matter of comity, this court should

yield to the jurisdiction of the Circuit Court No. 2 of Baltimore City.

On the other hand, the question of domicile is now before the state court, along with all other questions involved in the distribution of the trust estate. Counsel for all parties state that they are anxious to have a prompt determination of the issues. The way to obtain such a prompt determination is to ask for an immediate pretrial conference and a prompt hearing by the Circuit Court No. 2 of Baltimore City, which that court has always been willing to give in cases of this nature.

The complaint should be dismissed without prejudice. It is so ordered.