OFFUTT ET AL., TRUSTEES *v.* OFFUTT

[No. 92, October Term, 1953.]

102

*Decided February 11, 1954.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*William C. Walsh,* with whom were *Miles, Walsh and Stockbridge,* on the brief, for appellants.

*William J. Gunter,* with whom were *William A. Gunter* and *Walter W. Dawson,* on the brief, for appellee.

SOBELOFF, C. J., delivered the opinion of the Court.

The question presented by this appeal is whether, under the facts, the Chancellor had authority to determine that appellee, a beneficiary under his father's testamentary trust, is entitled to receive an allowance greater than the $200.00 monthly which the trustees have paid him since he reached his twenty-first birthday in August, 1952.

Appellee's father confirmed in his will, probated in 1943, a pre-marital agreement which made provision for his widow and left the bulk of his estate in trust for the sole benefit of the appellee, his only son. The widow renounced the will's provisions as to her and elected to take her statutory share of the estate. Her suit was terminated by an agreement between the trustees and herself. She also signed in the capacity of mother and natural guardian of the appellee.

By the terms of this agreement, the trustees were to pay to the widow $100.00 per month for the support

and maintenance of the son, then thirteen years old, so long as he should reside in the Oakland, Maryland, home, and thereafter the sum of $150.00 per month so long as the appellee "may be actually maintained" by his mother. The right was reserved by the mother "to make application to the Circuit Court for Garrett County, in Equity, for additional maintenance for good and sufficient cause to be shown." These provisions were the only modifications of the will material to the present appeal.

The settlement agreement was approved by the equity court. Thereafter in 1946, and again in 1948, appellee's mother petitioned for and received orders of the court increasing the allowance for maintenance and support of the infant son.

When appellee became of age, he received $69,000, the proceeds of certain insurance policies on his father's life, in which he was the named beneficiary, and various United States Government bonds issued in the joint names of his father and himself. The trustees, taking into consideration the annual income yielded by this $69,000, set appellee's monthly allowance under the trust at $200 per month. The appellee filed a petition alleging that it was the duty of the trustees to secure the court's approval of the allowances they paid him and stating that the amount being paid was insufficient. After ascertaining that the trust estate was about $369,000 with an annual income of approximately $10,000, the court granted him a monthly allowance of $300. From this order, the trustees appeal.

## I.

The appellee has filed a motion to dismiss the appeal on a double ground: first, that the trustees did not secure court approval of the appeal under Article 5, Section 43, 1951 Code, and second, that the trustees have no interest in the matter.

Article 5, Section 43, 1951 Code, is as follows: "Any receiver, trustee or other fiduciary appointed by, or

acting under the jurisdiction of any of the courts of equity of this State, shall have the right of an appeal to the Court of Appeals from any final decree hereafter entered or heretofore entered, provided the time for appeal from such decree has not expired, by which any preference or priority between creditors or other persons interested in the estate, is determined. Provided, however, that no such appeal shall be prosecuted without the consent and approval of the court having jurisdiction over the estate."

The trustees, however, do not base their appeal on this section. Plainly, the section is inapplicable because the decree does not determine "any preference or priority between creditors or other persons interested in the estate", within the meaning and limited scope of the section. The trustees claim to be endeavoring only to perform their duties in the manner that the settlor intended. In an appeal like this they are not required to secure the approval of the court. Cf. *Harlan v. Gleason*, 180 Md. 24, 30.

As to the second ground, the asserted lack of interest of the trustees, the answer is that they come here seeking the protection of the trust income and corpus from depletion by a court-ordered allowance that they do not deem necessary or desirable for the support and maintenance of appellee. It is their position that they consider the allowance made by the court extravagant under the circumstances.

The opinion in *Warehime v. Graf*, 83 Md. 98, 100, used language which is apposite here: "It is doubtless true, that a trustee to sell appointed by the Court, cannot appeal from an order of the tribunal which appointed him; for the reason, that having no interest in the property, or in the proceeds of the sale, he is merely the officer and the hand of the Court. *Lurman v. Fowler* [*Hubner*], 75 Md. 273. But this is not that case. Here the executors were appointed by the testator, and by the terms of the appointment, are charged with the duty, not only of selling the property, but also of seeing to it, that

the proceeds of the sale shall be so applied as to carry out the purposes of the testator. Part of the money arising from the sale is to remain in their hands in permanent trust, and the residue they are to distribute to persons whom the testator particularly names. In the discharge of their trust under this will it is, therefore, their duty to take such steps in this Court, as well as in the Court below, as will secure and protect the fund, so that the purposes of the testator shall be accomplished."

Where trustees are acting, not merely as the hand of the court, but in the exercise of a duty reposed in them by a settlor to administer the trust estate on the terms expressed, they cannot be said to lack an appealable interest. See 6 A. L. R. 2d 157 (Annotation). The cases relied upon by the appellee involve situations such as a trust to sell real estate and to divide the proceeds therefrom—situations clearly distinguishable from a continuing trust such as we have here. Cf. *MacNabb v. Sheridan*, 181 Md. 245, and cases therein cited. The motion to dismiss the appeal must be denied.

## II.

On the merits, we are confronted first by the appellee's contention that once a court of equity assumes jurisdiction of a trust at the request of the trustees, they must thereafter have the sanction of the court for all of their acts. The trustees maintain that the Chancellor did not assume jurisdiction of the trust. No application was made under Article 16, Section 292, 1951 Code. Nor did the settlor by his will require that the trustees be subject to court control. "If a settlor so provides, or a statute or court decree requires it, a trustee may be completely subject to court control, in the sense that he has no power to act except upon approval of the court of chancery. He then becomes in effect an officer of the court, like a receiver." 3 (Part 1) *Bogert, Trust and Trustees*, Sec. 563 (discussion of the effect in Maryland of complete court control), and the Maryland cases there cited. But this is not such a trust.

The Chancellor pointed out that the trustees themselves invoked the jurisdiction of the court and recites events which occurred after the approval of the settlement agreement: ". . . the trustees have been making herein certain annual reports, and obtaining the customary authorizations for changes in investments. They have annually filed petitions for and obtained court orders for special compensation for themselves as trustees and for legal services. . . When Mrs. Karin Offutt was holding over in the Second Street House, which was part of the trust estate, instead of bringing separate eviction proceedings, the trustees filed a petition herein and obtained an order requiring her to deliver possession.

"In 1948, upon the petition of Mrs. Karin Offutt for an increase in the allowance for the support and schooling of Daniel, III, and after a hearing at which testimony was taken, Judge Huster passed an order requiring the trustees to pay her $2,500 per year for the support, maintenance, and education of Daniel E. Offutt, III."

This, the appellee contends, discloses that the court of equity assumed jurisdiction of the trust at the request of the trustees. Even if we treat this as an assumption of jurisdiction, it does not follow, as argued by appellee, that the trustees must now seek the sanction of the court for all of their acts, that their discretionary powers conferred in the will are abridged and may be exercised only under the supervisory control of the court. A review of the Maryland authorities leads to the opposite conclusion.

In *Gottschalk v. Mercantile Trust and Deposit Co.,* 102 Md. 521, this Court, holding that a court of equity in assuming jurisdiction has the right to designate the banks in which the trustee should deposit the current funds of the estate, took occasion to say: "The precise area and limits of the jurisdiction acquired by a Court of equity over the administration of a trust thus subjected to its supervision have never been fixed, but must necessarily depend to some extent upon the nature of the trusts and the character of the powers conferred upon

the trustee. It may for instance be doubted if a Court of equity would, except under very special circumstances, compel a trustee to execute a power which the instrument conferring it declared should be exercised by him or not according to his own volition or at his own discretion. Thus in *Tempest v. Lord Camoys*, 21 Chy. Div. 571, the will gave to two trustees power 'in the exercise of their absolute discretion' of selling real estate and investing proceeds in other real estate. It also gave them power 'at their absolute discretion' to raise money by mortgage for the purchase of real estate. The trust being in process of administration under the supervision of equity the Court refused to compel one of the trustees against his own judgment to unite with the other trustee in mortgaging the real estate, and with the proceeds of the mortgage and other trust funds making a proposed purchase of other real estate.

"Nor does a Court of equity ordinarily in any form of proceeding control the exercise by a trustee or other fiduciary of a special power strictly personal in its nature such as the power sometimes given to a parent who is a life tenant or a trustee for his children to determine the proportions in which the trust fund is to be divided between them or at what age they shall receive their respective shares of the estate absolutely, or whether the income shall be paid over to them or expended by their trustee for their support and maintenance." (p. 527)

The Court there specifically pointed out: "The present case is however not, strictly speaking, one of the control by the Court of the exercise of a power conferred by the will upon the trustees. The will although conferring on the trustees general powers of disposition of trust property contains no express power touching the selection of a place of custody or deposit for funds temporarily in their hands. Furthermore the powers which are granted by the will for the management of the trust are in no sense personal to the trustees named in that instrument, for they are conferred in terms upon

'the said trustees or whoever may be trustee or trustees hereunder.' " (p. 528)

Again, in *Whitelock v. Dorsey*, 121 Md. 497, 503, this Court reiterated that in administering a trust a court of equity ordinarily will not interfere with the trustees' exercise of a personal discretionary power.

The principle that the exercise by a trustee of a personal discretion conferred upon him is not subject to control by the court, except to prevent an abuse of discretion, see *Pole v. Pietsch*, 61 Md. 570; *Baer v. Kahn*, 131 Md. 17; *York v. Maryland Trust Co.*, 149 Md. 608; *Marbury v. Safe Deposit & Trust Co.*, 177 Md. 165; *Restatement of Trusts*, Sec. 187, remains applicable even when the court has assumed jurisdiction. *39 Cyclopedia of Law and Procedure* 316 (cited with approval in *Baer v. Kahn, supra,* at 26). While some cases, in general language, seemingly declare a broader rule, it will be found on examination that the provisions of the instruments involved and the circumstances of those cases present distinguishing features. Cf. *Abell v. Abell*, 75 Md. 44; *Baer v. Kahn, supra*; *Kramme v. Mewshaw*, 147 Md. 535; *McCrory v. Beeler*, 155 Md. 456; *Johnson v. Webster*, 168 Md. 568. Nothing in them conflicts with the rule laid down in *Gottschalk v. Mercantile Trust Co., supra*; and this is the rule which governs the case at bar. Thus, where a personal power of discretion is vested in the trustees, the Chancellor, even after an assumption of jurisdiction, will require a showing of abuse of discretion before substituting his judgment for that of the trustees, even though he might control their imperative, impersonal, or ministerial powers. Cf. *Robinson v. Bonaparte*, 102 Md. 63, 70.

### III.

Having determined the applicable rule, our inquiry becomes: In determining the amount of income that they should pay from the trust estate for the appellee's support and maintenance, was it an abuse of discretion for the trustees to consider his other income?

The *Restatement of Trusts,* Sec. 128, declares that the extent of the interest of the beneficiary of a trust depends upon the intention manifested by the settlor. Comments d. (Discretionary trusts) and e. (Trust for support) add: "By the terms of the trust it may be provided that the trustee shall pay to or apply for a beneficiary only so much of the income and principal or either as the trustee in his discretion shall see fit to pay or apply. In such a case it depends upon the manifestation of intention of the settlor to what extent the trustee has discretion to refuse to make such payment or application. If the settlor manifests an intention that the discretion of the trustee shall be uncontrolled, the beneficiary cannot compel the trustee to make any payment to him or application for his benefit, if the trustee does not act dishonestly or from an improper motive. . .

"By the terms of the trust it may be provided that the trustee shall pay or apply only so much of the income and principal or either as is necessary for the education or support of a beneficiary. In such a case the beneficiary cannot compel the trustee to pay to him or to apply for his benefit more than the trustee in the exercise of a sound discretion deems necessary for his education or support.

"It is a question of interpretation whether the beneficiary is entitled to support out of the trust fund even though he has other resources. The inference is that he is so entitled."

The intention of the settlor must be looked to in determining whether the trustees committed an abuse of discretion in considering the beneficiary's independent resources when they fixed the amount of the allowance for support and maintenance. See also 1 *Scott on Trusts,* Sec. 128.4; 2 A. L. R. 2d 1431 (Annotation) and cases there cited. In *Board of Visitors and Governors of Washington College v. Safe Deposit and Trust Company of Baltimore,* 186 Md. 89, Judge Henderson announced the same rule, after considering the question as one of first impression in this Court and after reviewing the

out-of-state authorities.  In that case the settlor's intent was determined to be that the beneficiary's independent means should be taken into account.

The language in this case to be interpreted is: "After his arrival at the age of twenty-one years, my said Trustees shall pay to him out of the income from my said estate a monthly allowance of such amount as they may deem necessary and desirable for his support and maintenance and it is my desire that my said Trustees shall have absolute authority and discretion as to the amount of the said monthly allowance that shall be paid to him. . ." The testator clearly expressed the intention that the trustees were to have absolute power and discretion in fixing the amount to be paid to appellee.  The monthly allowance to be received by the appellee is not an absolute gift of support and maintenance but is only so much of the income of the trust as the trustees "may deem necessary and desirable for his support and maintenance."  The settlor, aware that appellee would at the age of twenty-one come into possession of government bonds and of life insurance proceeds totaling about $69,000, might understandably feel no compulsion to provide for appellee an absolute gift from the annual trust income but might well leave the amount to the judgment of the trustees, who could vary the amounts with any change in circumstances.

In determining the necessity and desirability of the monthly allowance, the trustees were within their power of discretion in giving consideration to appellee's independent sources of income.

The settlor's direction until appellee should attain twenty-one was "that my Trustees shall pay out of the income of my estate, such sum or sums as may be necessary to properly maintain, educate, support and further the advancement of my said son. . ."  In the provision applicable after appellee's arrival at that age, the settlor abandoned the objective test and provided that the monthly allowance should be in such amount as the trustees "shall *deem* necessary and desirable for his support

and maintenance." These words, indicating a subjective standard, again reflect the settlor's intention not to give an absolute gift of support and maintenance but to leave the monthly allowance in the absolute discretion of the trustees, who would be free to view all circumstances that relate to need and desirability.

The settlor's will, taken as a whole, indicates a purpose to preserve the bulk of the trust estate, and quite likely to increase the corpus, until the appellee should at the age of forty become entitled to the corpus. If the trustees "do not deem it desirable" to pay to appellee at the age of thirty the sum of $25,000 from the corpus, a payment which the settlor "authorized" and "empowered", the trustees are authorized to continue the monthly allowance "in such an amount as they deem necessary and desirable". If the trustees "do not deem it advisable" to pay $25,000 to the appellee at the age of thirty-five, they "are directed" to continue "such a monthly allowance as they may consider necessary and proper." The provisions reflect the settlor's caution in allowing trust income or corpus to come into the appellee's control. Monthly allowance, and, more importantly, the wide discretion vested in the trustees after the beneficiary reaches twenty-one are designed to protect the appellee's interest in the ultimate distribution.

Our conclusion is that the trustees, in considering the other income of appellee in determining the amount of the monthly allowance, did not thereby abuse their discretion, but rather exercised their powers in accordance with the intention manifested by the settlor.

## IV.

Appellee also contends that the trustees' failure to appeal from the two prior orders of the court granting increases in the amount of monthly payments, and their failure to question the right of the court to supervise and control their discretionary powers makes the issue of discretionary power *res judicata*. There are several answers to this contention. Under the settlement agree-

ment the trustees may have surrendered their absolute discretion for the period of appellee's infancy, but any such modification of the testamentary trust did not extend to the period of his majority, when he would no longer be "actually maintained" by his mother. That the trustees, possessing an absolute discretion, acquiesced in a court determination of the monthly allowance for a period of time does not of itself bar the trustees from all future exercise of the discretion that the settlor intended them to have. The doctrine of *res judicata* is not determinative of the issue.

For the above reasons the decree of the Chancellor must be reversed.

> *Decree reversed and case remanded for the passage of a decree in accordance with this opinion. Costs to paid by the trust estate.*